# STRYCKER'S BAY NEIGHBORHOOD COUNCIL, INC. *v.* KARLEN ET AL.

No. 79–168. Decided January 7, 1980*

PER CURIAM.

The protracted nature of this litigation is perhaps best illustrated by the identity of the original federal defendant, "George Romney, Secretary of the Department of Housing and Urban Development." At the center of this dispute is the site of a proposed low-income housing project to be constructed on Manhattan's Upper West Side. In 1962, the New York City Planning Commission (Commission), acting in conjunction with the United States Department of Housing and Urban Development (HUD), began formulating a

---

*Together with No. 79–181, *City of New York* v. *Karlen et al.;* and No. 79–184, *Secretary of Housing and Urban Development* v. *Karlen et al.,* also on petitions for certiorari to the same court.

plan for the renewal of 20 square blocks known as the "West Side Urban Renewal Area" (WSURA) through a joint effort on the part of private parties and various government agencies. As originally written, the plan called for a mix of 70% middle-income housing and 30% low-income housing and designated the site at issue here as the location of one of the middle-income projects. In 1969, after substantial progress toward completion of the plan, local agencies in New York determined that the number of low-income units proposed for WSURA would be insufficient to satisfy an increased need for such units. In response to this shortage the Commission amended the plan to designate the site as the future location of a high-rise building containing 160 units of low-income housing. HUD approved this amendment in December 1972.

Meanwhile, in October 1971, the Trinity Episcopal School Corp. (Trinity), which had participated in the plan by building a combination school and middle-income housing development at a nearby location, sued in the United States District Court for the Southern District of New York to enjoin the Commission and HUD from constructing low-income housing on the site. The present respondents, Roland N. Karlen, Alvin C. Hudgins, and the Committee of Neighbors To Insure a Normal Urban Environment (CONTINUE), intervened as plaintiffs, while petitioner Strycker's Bay Neighborhood Council, Inc., intervened as a defendant.

The District Court entered judgment in favor of petitioners. See *Trinity Episcopal School Corp.* v. *Romney,* 387 F. Supp. 1044 (1974). It concluded, *inter alia,* that petitioners had not violated the National Environmental Policy Act of 1969 (NEPA), 83 Stat. 852, 42 U. S. C. § 4321 *et seq.*

On respondents' appeal, the Second Circuit affirmed all but the District Court's treatment of the NEPA claim. See *Trinity Episcopal School Corp.* v. *Romney,* 523 F. 2d 88

(1975). While the Court of Appeals agreed with the District Court that HUD was not required to prepare a full-scale environmental impact statement under § 102 (2)(C) of NEPA, 42 U. S. C. § 4332 (2)(C), it held that HUD had not complied with § 102 (2)(E),[1] which requires an agency to "study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources." 42 U. S. C. § 4332 (2)(E). See 523 F. 2d., at 92–95. According to the Court of Appeals, any consideration by HUD of alternatives to placing low-income housing on the site "was either highly limited or nonexistent." *Id.*, at 94. Citing the "background of urban environmental factors" behind HUD's decision, the Court of Appeals remanded the case, requiring HUD to prepare a "statement of possible alternatives, the consequences thereof and the facts and reasons for and against. . . ." *Ibid.* The statement was not to reflect "HUD's concept or the Housing Authority's views as to how these agencies would choose to resolve the city's low income group housing situation," but rather was to explain "how within the framework of the Plan its objective of economic integration can best be achieved with a minimum of adverse environmental impact." *Ibid.* The Court of Appeals believed that, given such an assessment of alternatives, "the agencies with the cooperation of the interested parties should be able to arrive at an equitable solution." *Id.*, at 95.

On remand, HUD prepared a lengthy report entitled Special Environmental Clearance (1977). After marshaling the data, the report asserted that, "while the choice of Site 30 for development as a 100 percent low-income project has raised

---

[1] At the time of the Court of Appeals' decision, this section was numbered 102 (2)(D) and was codified at 42 U. S. C. § 4332 (2)(D) (1970 ed.). Congress redesignated it two weeks later. See Act of Aug. 9, 1975, Pub. L. 94–83, 89 Stat. 424.

valid questions about the potential social environmental impacts involved, the problems associated with the impact on social fabric and community structures are not considered so serious as to require that this component be rated as unacceptable." Special Environmental Clearance Report 42. The last portion of the report incorporated a study wherein the Commission evaluated nine alternative locations for the project and found none of them acceptable. While HUD's report conceded that this study may not have considered all possible alternatives, it credited the Commission's conclusion that any relocation of the units would entail an unacceptable delay of two years or more. According to HUD, "[m]easured against the environmental costs associated with the minimum two-year delay, the benefits seem insufficient to justify a mandated substitution of sites." *Id.,* at 54.

After soliciting the parties' comments on HUD's report, the District Court again entered judgment in favor of petitioners. See *Trinity Episcopal School Corp.* v. *Harris,* 445 F. Supp. 204 (1978). The court was "impressed with [HUD's analysis] as being thorough and exhaustive," *id.,* at 209–210, and found that "HUD's consideration of the alternatives was neither arbitrary nor capricious"; on the contrary, "[i]t was done in good faith and in full accordance with the law." *Id.,* at 220.

On appeal, the Second Circuit vacated and remanded again. *Karlen* v. *Harris,* 590 F. 2d 39 (1978). The appellate court focused upon that part of HUD's report where the agency considered and rejected alternative sites, and in particular upon HUD's reliance on the delay such a relocation would entail. The Court of Appeals purported to recognize that its role in reviewing HUD's decision was defined by the Administrative Procedure Act (APA), 5 U. S. C. § 706 (2) (A), which provides that agency actions should be set aside if found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. . . ." Additionally,

however, the Court of Appeals looked to "[t]he provisions of NEPA" for "the substantive standards necessary to review the merits of agency decisions. . . ." 590 F. 2d, at 43. The Court of Appeals conceded that HUD had "given 'consideration' to alternatives" to redesignating the site. *Id.*, at 44. Nevertheless, the court believed that " 'consideration' is not an end in itself." *Ibid.* . Concentrating on HUD's finding that development of an alternative location would entail an unacceptable delay, the appellate court held that such delay could not be "an overriding factor" in HUD's decision to proceed with the development. *Ibid.* According to the court, when HUD considers such projects, "environmental factors, such as crowding low-income housing into a concentrated area, should be given determinative weight." *Ibid.* The Court of Appeals therefore remanded the case to the District Court, instructing HUD to attack the shortage of low-income housing in a manner that would avoid the "concentration" of such housing on Site 30. *Id.*, at 45.

In *Vermont Yankee Nuclear Power Corp.* v. *NRDC*, 435 U. S. 519, 558 (1978), we stated that NEPA, while establishing "significant substantive goals for the Nation," imposes upon agencies duties that are "essentially procedural." As we stressed in that case, NEPA was designed "to insure a fully informed and well-considered decision," but not necessarily "a decision the judges of the Court of Appeals or of this Court would have reached had they been members of the decisionmaking unit of the agency." *Ibid.* *Vermont Yankee* cuts sharply against the Court of Appeals' conclusion that an agency, in selecting a course of action, must elevate environmental concerns over other appropriate considerations. On the contrary, once an agency has made a decision subject to NEPA's procedural requirements, the only role for a court is to insure that the agency has considered the environmental consequences; it cannot " 'interject itself within the area of discretion of the executive as to the choice of the action to

be taken.' " *Kleppe* v. *Sierra Club,* 427 U. S. 390, 410, n. 21 (1976). See also *FPC* v. *Transcontinental Gas Pipe Line Corp.,* 423 U. S. 326 (1976).[2]

In the present litigation there is no doubt that HUD considered the environmental consequences of its decision to redesignate the proposed site for low-income housing. NEPA requires no more. The petitions for certiorari are granted, and the judgment of the Court of Appeals is therefore

*Reversed.*

MR. JUSTICE MARSHALL, dissenting.

The issue raised by these cases is far more difficult than the *per curiam* opinion suggests. The Court of Appeals held that the Secretary of Housing and Urban Development (HUD) had acted arbitrarily in concluding that prevention of a delay in the construction process justified the selection of a housing site which could produce adverse social environmental effects, including racial and economic concentration. Today the majority responds that "once an agency has made a decision subject to NEPA's procedural requirements, the only role for a court is to insure that the agency has considered the environmental consequences," and that in this litigation "there is no doubt that HUD considered the environmental consequences of its decision to redesignate the proposed site for low-income housing. NEPA requires no more." The majority finds support for this conclusion in the closing para-

---

[2] If we could agree with the dissent that the Court of Appeals held that HUD had acted "arbitrarily" in redesignating the site for low-income housing, we might also agree that plenary review is warranted. But the District Court expressly concluded that HUD had not acted arbitrarily or capriciously and our reading of the opinion of the Court of Appeals satisfies us that it did not overturn that finding. Instead, the appellate court required HUD to elevate environmental concerns over other, admittedly legitimate, considerations. Neither NEPA nor the APA provides any support for such a reordering of priorities by a reviewing court.

graph of our decision in *Vermont Yankee Nuclear Power Corp.* v. *NRDC,* 435 U. S. 519, 558 (1978).

*Vermont Yankee* does not stand for the broad proposition that the majority advances today. The relevant passage in that opinion was meant to be only a "further observation of some relevance to this case," *id.,* at 557. That "observation" was a response to this Court's perception that the Court of Appeals in that case was attempting "under the guise of judicial review of agency action" to assert its own policy judgment as to the desirability of developing nuclear energy as an energy source for this Nation, a judgment which is properly left to Congress. *Id.,* at 558. The Court of Appeals had remanded the case to the agency because of "a single alleged oversight on a peripheral issue, urged by parties who never fully cooperated or indeed raised the issue below," *ibid.* It was in this context that the Court remarked that "NEPA does set forth significant substantive goals for the Nation, but its mandate to the agencies is *essentially* procedural." *Ibid.* (emphasis supplied). Accordingly, "[a]dministrative decisions should be set aside in this context, *as in every other,* only for substantial procedural *or substantive* reasons as mandated by statute," *ibid.* (emphasis supplied). Thus *Vermont Yankee* does not stand for the proposition that a court reviewing agency action under NEPA is limited solely to the factual·issue of whether the agency "considered" environmental consequences. .The agency's decision must still be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U. S. C. § 706 (2)(A), and the reviewing court must still insure that the agency "has taken a 'hard look' at environmental consequences," *Kleppe* v. *Sierra Club,* 427 U. S. 390, 410, n. 21 (1976).

In the present case, the Court of Appeals did not "substitute its judgment for that of the agency as to the environmental consequences of its actions," *ibid.,* for HUD in its

Special Environmental Clearance Report acknowledged the adverse environmental consequences of its proposed action: "the choice of Site 30 for development as a 100 percent low-income project has raised valid questions about the potential social environmental impacts involved." These valid questions arise from the fact that 68% of all public housing units would be sited on only one crosstown axis in this area of New York City. As the Court of Appeals observed, the resulting high concentration of low-income housing would hardly further racial and economic integration. The environmental "impact . . . on social fabric and community structures" was given a B rating in the report, indicating that from this perspective the project is "questionable" and ameliorative measures are "mandated." The report lists 10 ameliorative measures necessary to make the project acceptable. The report also discusses two alternatives, Sites 9 and 41, both of which are the appropriate size for the project and require "only minimal" amounts of relocation and clearance. Concerning Site 9 the report explicitly concludes that "[f]rom the standpoint of social environmental impact, this location would be superior to Site 30 for the development of low-rent public housing." The sole reason for rejecting the environmentally superior site was the fact that if the location were shifted to Site 9, there would be a projected delay of two years in the construction of the housing.

The issue before the Court of Appeals, therefore, was whether HUD was free under NEPA to reject an alternative acknowledged to be environmentally preferable solely on the ground that any change in sites would cause delay. This was hardly a "peripheral issue" in the case. Whether NEPA, which sets forth "significant substantive goals," *Vermont Yankee Nuclear Power Corp.* v. *NRDC, supra,* at 558, permits a projected 2-year time difference to be controlling over environmental superiority is by no means clear. Resolution of the issue, however, is certainly within the normal scope of review of agency action to determine if it is arbitrary,

capricious, or an abuse of discretion.*   The question whether
HUD can make delay the paramount concern over environ-
mental superiority is essentially a restatement of the question
whether HUD in considering the environmental consequences
of its proposed action gave those consequences a "hard look,"
which is exactly the proper question for the reviewing court
to ask.   *Kleppe* v. *Sierra Club, supra,* at 410, n. 21.

The issue of whether the Secretary's decision was arbitrary
or capricious is sufficiently difficult and important to merit
plenary consideration in this Court.   Further, I do not sub-
scribe to the Court's apparent suggestion that *Vermont
Yankee* limits the reviewing court to the essentially mindless
task of determining whether an agency "considered" environ-
mental factors even if that agency may have effectively
decided to ignore those factors in reaching its conclusion.
Indeed, I cannot believe that the Court would adhere to that
position in a different factual setting.   Our cases establish
that the arbitrary-or-capricious standard prescribes a "search-
ing and careful" judicial inquiry designed to ensure that the
agency has not exercised its discretion in an unreasonable
manner.   *Citizens To Preserve Overton Park, Inc.* v. *Volpe,*
401 U. S. 402, 416 (1971).   Believing that today's summary
reversal represents a departure from that principle, I respect-
fully dissent.

It is apparent to me that this is not the type of case for a
summary disposition.   We should at least have a plenary
hearing.

---

*The Secretary concedes that if an agency gave little or no weight to
environmental values its decision might be arbitrary or capricious.   Pet.
for Cert. in No. 79–184, p. 15, n. 16.