GLOUCESTER COUNTY CONCERNED CITIZENS, Reuben Brody, Bruce Dennis and Ruth Z. Dennis, Evans Neale and Carolyn Neale, C. Walter Neale and Esther E. Neale, Daniel Ryan and Susan Ryan, Plaintiffs,

v.

Neil E. GOLDSCHMIDT, Secretary of Transportation; John S. Hassell, Jr., Administrator, Federal Highway Administration; Robert E. Kirby, Administrator, Region I, Federal Highway Administration; and Louis J. Gambaccini, Commissioner of the New Jersey Department of Transportation, Defendants.

Civ. A. No. 80–2524.

United States District Court,
D. New Jersey.

March 10, 1982.

Wayne Partenheimer, Melnik, Morgan & Klein, P. A., Haddonfield, N. J., for plaintiffs.

Jerome B. Simandle, Asst. U. S. Atty., Trenton, N. J., for defendants Goldschmidt, Hassell and Kirby.

Howard B. Epstein and John J. Maiorana, Deputy Attys. Gen., Trenton, N. J., for defendant Gambaccini.

Charles Lee Harp, Archer, Greiner & Read, Haddonfield, N. J., for amicus Committee for the Completion of Highway 55.

## OPINION

GERRY, District Judge.

This case presents a challenge by members of an unincorporated civic association and various individuals to the proposed construction of a freeway in Gloucester County, New Jersey. Plaintiffs seek declaratory and injunctive relief against funding for the planning and construction of Route 55 due to alleged violations of the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.*, and the Federal Aid Highway Act, 23 U.S.C. § 101 *et seq.*

The federal defendants are Neil E. Goldschmidt, Secretary of Transportation; John S. Hassell, Jr., Administrator, Federal Highway Administration (FHWA); Robert E. Kirby, Administrator of Region I of FHWA. Louis J. Gambaccini, Commissioner of the New Jersey Department of Transportation (NJDOT), is the state defendant.

Plaintiffs filed their three-count complaint on August 7, 1980. On November 20, 1980, plaintiffs filed a petition for a temporary restraining order and motion for preliminary injunction. The court denied the petition and motion, without prejudice, by order dated December 3, 1980.

Count I of the complaint alleges that the Final Environmental Impact Statement (FEIS) for Route 55 fails to comply with alleged NEPA requirements of considering secondary impacts of the proposed highway and presenting a cost-benefit analysis.

Under Count II, plaintiffs claim that the FEIS fails adequately to consider alternatives to the proposed Route 55, within the requirements of NEPA and relevant regulations.

Count III alleges that defendants should be required to prepare a supplemental FEIS because there has allegedly been a substantial change in the design of Route 55 which significantly affects the environment.

The complaint is directed at a 20-mile stretch of Route 55 proposed to be constructed as a four-lane freeway. This segment would extend from Route 42 in Deptford on the north to Route 40 in Malaga where it would join an already completed

section of Route 55 extending to Port Elizabeth and would roughly parallel Route 47 (Delsea Drive).

According to the FEIS, the purpose of the route is to relieve congestion along Route 47 and to serve the Vineland-Millville area. The projected traffic volumes for this area are expected to far exceed the capacities of the existing roadways as early as 1990.

The Route 55 Freeway was originally authorized by the State Legislature in 1964. Location studies for the segment in question began in the late 1960's. Public hearings were held on August 12, 1970 to receive oral and written testimony to evaluate the most feasible and acceptable locations for the project.

A draft environmental impact statement (DEIS) was prepared under the supervision of the NJDOT and the FHWA and approved by the Assistant Commissioner of Highways on October 10, 1971. The DEIS was prepared and circulated to the public on June 1, 1972. Following the circulation and pursuant to 23 C.F.R. § 790.5, another corridor public hearing was held on July 6, 1972.

At the hearing, NJDOT presented three feasible corridor locations (S2, R2, R5), R5 being located to the east, R2 in the center and S2 to the west. Apparently, the comments at the hearing favored construction but expressed different preferences for the alternative corridors. Corridor S2 was the location ultimately adopted by the NJDOT.

Thereafter, comments concerning the DEIS were received from the public and from other governmental agencies, and reviewed by both NJDOT and FHWA. A final EIS was prepared and approved by FHWA on September 2, 1975, at which time it also approved the S2 corridor location.

Since the approval of the FEIS, defendants have updated it with a Noise Study Report of August 1977, a Cultural Resources Inventory of September 1977, supplemented in September 1978, and public design hearings in November 1978. A design was approved in 1978.

Recently, NJDOT proposed a change in the highway, allegedly due to the financial realities bearing upon the availability of funds for highway construction. NJDOT proposed to construct the road in two stages: phase I is proposed as an interim stage in the construction of the full freeway, characterized by a reduction in the number of structures (inter-changes and/or over- and underpasses) present on the freeway; phase II will involve completion of the freeway structures as originally planned. FHWA has not yet studied the proposal. To that effect, FHWA has requested that NJDOT prepare and submit the proposed modifications accompanied by an environmental reevaluation. Although NJDOT has made no final or official submission crystallizing the proposed changes, plaintiffs seek, in Count III, a determination that the changes are "substantial," requiring the preparation of a supplemental EIS. Defendants contend that the relief sought by plaintiffs is premature because the FHWA has not yet had the opportunity to evaluate the changes and cannot do so until the environmental reevaluation process has been completed. Thus Count III of the complaint must be dismissed.

Defendants also move for summary judgment on Counts I and II on the ground that the FEIS is in full compliance with NEPA and gave adequate consideration to secondary impacts, cost-benefit concerns and alternatives to highway construction. Moreover, defendants contend that the scope of the court's review under NEPA is limited to determining whether defendants complied with the requisite statutory procedures. NEPA does not confer upon plaintiffs any substantive rights.

Plaintiffs take the position that defendants have not complied with NEPA in that the FEIS is inadequate because there is insufficient cost-benefit analysis and because it does not consider secondary impacts of the project. Because of these deficiencies, a new EIS must be prepared prior to initiation of construction. Moreover, the discussion of proposed alternatives in the FEIS is also inadequate because only the

three alternative routes are discussed in detail. Thus, a new EIS must be made, and plaintiffs are entitled to summary judgment.

Committee for the Completion of Route 55 urges, as amicus curiae, that the court consider the economic and social harm to the county if an injunction issues.

*Propriety of Summary Judgment*

F.R.Civ.P. 56 permits the entry of judgment where the moving party has demonstrated that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Small v. Seldows Stationery*, 617 F.2d 992, 994 (3d Cir. 1980).

Plaintiffs' complaint raises two basic issues:

1) whether alleged deficiencies in a final environmental impact statement amount to non-compliance with NEPA, warranting an injunction against funding for a proposed highway project; and

2) whether a subsequent proposal by the state to undertake construction in two phases constitutes a change in the FEIS, requiring a supplemental environmental study, and whether the federal defendants have had sufficient time to consider the subsequent proposal and to determine its deviation from the original proposal, thus rendering the governmental action ripe for review at this time.

Both of these issues raised by the complaint may be addressed in the context of the parties' cross-motions for summary judgment. The resolution of the issues does not require consideration of disputed factual issues. Moreover, there are very few facts which are in dispute among the parties, and none of them are material to these motions.

*Counts I and II*

Counts I and II of the complaint allege that defendants have violated NEPA. Specifically, plaintiffs claim that the FEIS is legally deficient in a number of respects. NEPA requires that a federal agency contemplating "any major Federal action funded under a program of grants to States," 42 U.S.C. § 4332(2)(D)

(C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

(i) the environmental impact of the proposed action;

(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented;

(iii) alternatives to the proposed action;

(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity; and

(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

Plaintiffs do not set forth the standard of review of an EIS. However, plaintiffs take the position that the EIS is an "environmental full disclosure tool," thus implying that the court is to conduct a full review of the EIS. Such a position would appear to invite the court to substitute its judgment for that of the agency.

■ However, the thrust of NEPA is procedural. The purpose of the statute is to prescribe procedures which a federal agency must follow before undertaking any major federal action. The procedures are designed to insure that the agency takes a hard look at the environmental consequences of its proposed action. *Bosco v. Beck*, 475 F.Supp. 1029, 1033–34 (D.N.J. 1979) (Fisher, J.), *aff'd* 614 F.2d 769 (3d Cir.), *cert. denied*, 449 U.S. 822, 101 S.Ct. 81, 66 L.Ed.2d 24 (1980).

NEPA does set forth significant substantive goals for the Nation, but its mandate to the agencies is essentially procedural. It is to insure a fully informed and well-considered decision, not necessarily a decision the judges of the Court of Appeals or of this Court would have reached had they been members of the decision-making unit of this agency.

Administrative decisions should be set aside in this context, as in every other, not simply because the Court is unhappy with the result reached.

*Vermont Yankee Nuclear Power Corp. v. NRDC,* 435 U.S. 519, 558, 98 S.Ct. 1197, 1219, 55 L.Ed.2d 460 (1978). The Court's *Vermont Yankee* decision recognizes the impropriety of federal courts engrafting additional procedural or substantive standards on to the statutory requirements for administrative action. *See North Slope Borough v. Andrus,* 642 F.2d 589, 598–9 (D.C.Cir. 1980).

The Court has subsequently articulated the scope of review of an agency action to ascertain its conformance with NEPA in *Strycker's Bay Neighborhood Council v. Karlen,* 444 U.S. 223, 100 S.Ct. 497, 62 L.Ed.2d 433 (1980), directing that:

> once an agency has made a decision subject to NEPA's procedural requirements, the only role for a court is to insure that the agency has considered the environmental consequences; it cannot "interject itself within the area of discretion of the executive as to the choice of the action to be taken."

■ Thus, under *Vermont Yankee,* this court's review of the agency procedures within the requirements of NEPA is governed by the Administrative Procedure Act, 5 U.S.C. § 706(2)(D), which permits a court to set aside agency action found to be "without observance of procedure required by law." Accordingly, the only question properly before the court with regard to the sufficiency of the FEIS is: have the defendants followed the procedures required by NEPA in formulating the FEIS? The substance of the impact statement is not for the court's review except insofar as it reveals a failure to comply with the requisite procedures. Thus, this court will consider whether the FEIS "was compiled in objective good faith and [whether] the resulting statement would permit a decision-maker to fully consider and balance environmental factors." [Citations omitted.] *Monroe County Conservation Council v. Adams,* 566 F.2d 419, 422 (2d Cir. 1977).

Plaintiffs' first cause of action alleges a violation of NEPA based upon the purported absence of consideration of "secondary impacts" of the Route 55 project, specifically: (1) how the highway would fit into the state's existing highway network; (2) what effect it would have on existing and planned mass transit lines; and (3) the impact upon development and population growth. The court notes that the original complaint stated seven separate substantive failures of the FEIS in terms of secondary impact. For purpose of these motions, plaintiffs only rely on three deficiencies in their brief in support of their motion for summary judgment, apparently abandoning the other claims.

Plaintiffs argue that the FEIS fails to give consideration to questions of general or broad significance. For example, other than an old NJDOT master plan, there is no evaluation of how the proposed route would fit into the state's existing highway network. Moreover, plaintiffs contend that the FEIS does not indicate what effect, if any, the highway would have on existing and planned mass transit lines, even though there are future plans for rapid transit system tracks in the median of the roadway. In addition, the statement does not consider whether the construction would influence drivers to use automobiles rather than mass transit, diminishing the potential need for new or supplemental mass transit lines. Finally, plaintiffs complain that, although the FEIS acknowledges that the highway will act as a catalyst to development in the surrounding area, it does not go on to study the secondary effects of the road such as increased development, with its concomitant increase in population and demand for state, county and municipal services, such as schools, police and fire protection and sewerage facilities.

■ The role of Route 55 in the state's existing highway network does not appear to be discussed in the FEIS as a principal topic. However, the fact that defendants have not isolated this subject for individualized discussion does not mean that there is no consideration of how the road would fit

into the state's existing highway network. There are repeated references in the report concerning the relationship between Route 55 and existing Route 47. Moreover, there are several maps which illustrate the proposed highway's specific place within the state's highway network. Finally, the report describes the existing traffic volume figures and the average estimated figures for the year 1990, evidencing a clear need for a four-lane freeway in the Gloucester County area. Thus, there is information in the FEIS which evidences that defendants considered the place of Route 55 within the state's highway network.

With respect to the interaction between Route 55 and existing or planned mass transit lines, the FEIS illustrated such an interaction and also discussed the usage of existing mass transit lines. The report describes Route 55 as a link in the regional transportation network, particularly since the extension of rapid transit service beyond Glassboro to Cape May would be a losing proposition. This conclusion is verified both by the number of users on the Cape May-Reading Seashore Line and by the high cost of subsidization for the operation of that line. Thus, the FEIS does indicate that the highway would not, at least initially, have any effect on tentative plans for a rapid transit system to be constructed in the median of Route 55, since such service was not considered economically feasible regardless of the highway construction. In fact, without the projected development which the highway would permit, the extension of rapid transit lines into plaintiffs' area is even less likely.

■ In light of the economic disincentives to expansion of rapid transit into the area, a projection by defendants as whether construction of the highway "would influence many drivers to use automobiles rather than mass transit, thus diminishing the potential need for new or supplemental mass transit lines" would amount to pure speculation. Although NEPA requires the agency to prepare a detailed statement on "the relationship between local short-term uses of man's environment and the mainte-nance and enhancement of long term productivity," it does not direct an agency to invent obstacles to the development of short-term uses where there is no indication that the proposed obstacles constitute an enhancement of long-term productivity or a realistic possibility affecting that relationship in the near future. Thus, plaintiffs' complaint that defendants did not speculate on future events, which, based on the information available at the time of the FEIS, appear improbable, does not articulate a serious deficiency in the FEIS.

■ Plaintiffs argue that the failure to consider secondary impacts renders an FEIS invalid and requires a new impact statement, *citing Coalition for Canyon Preservation v. Bowers*, 632 F.2d 774 (1980). The court has already indicated that in the instant case defendants have not failed to consider secondary impacts. The FEIS, while not exhaustive on the subject, does consider the highway network, mass transit, and projected growth. Thus, plaintiffs' case authority is irrelevant to the situation at hand. Moreover, *Coalition for Canyon Preservation* makes it clear that a secondary impact must be significant in order for its absence to render an EIS inadequate. Significance can only be determined on the facts of each case, with reference to the special environmental circumstances to be affected by the proposed governmental action. Thus, in *Coalition for Canyon Preservation*, the EIS for the proposed superhighway, which by-passed three small rural towns relying on tourism for their main source of income, did not consider the impact of the project on those towns. In light of the fact that the town's survival was threatened, the potential impact upon it of the superhighway was significant.

■ Likewise in *Rankin v. Coleman*, 394 F.Supp. 647 (E.D.N.C.1975), where a proposed highway project would link off-shore islands previously traversable by a two-lane road and would itself cause extensive development, the failure to consider the effect of the highway on increased demand for water usage and community services, and on natural barriers to storms resulted in a finding

that the EIS was inadequate. *Rankin* involved an ecologically sensitive marine environment, the development of which was physically prevented by the isolation of the islands. Because of the sensitivity of the environment, the complete failure to consider secondary impact was a significant failure. In the instant case, there is no ecologically sensitive environment, nor are there natural barriers requiring protection from development. Nor is the highway itself a disruptive developmental force as was the case in *Rankin*. In fact, the population figures in the FEIS demonstrate that the area has grown and will continue to grow even without Route 55, since there are roads which service this area. The fact that the roads are not adequate to accommodate all of the traffic which they must bear has not hindered development in the same manner that the inaccessibility of an island with minimal roads discourages development. Nor does the proposed highway construction threaten to destroy the economic livelihood of the communities in its vicinity, thus rendering the failure to consider indirect consequences of construction "significant."

Under their own cases, plaintiffs have not demonstrated that the secondary impact is significant. Thus, plaintiffs are not entitled to summary judgment on Count I on the ground of defendants' failure to consider secondary effects.

Plaintiffs also contend that they are entitled to summary judgment on Count I because the FEIS does not contain an adequate cost-benefit analysis. Plaintiffs argue that to comply with NEPA, the FEIS must sufficiently weigh the environmental costs of the proposed project against the benefits to the public from the project. The costs of the project in environmental terms are not sufficiently quantified. At best, plaintiffs acknowledge, there is a meager attempt at cost-benefit analysis in terms of anticipated tax losses and displacement of people, businesses and farms. In addition, plaintiffs maintain, without citation of authority that the FEIS must weigh the costs versus the benefits of all reasonable alternatives. Examples of costs which

should have been weighed are the cost of additional use of oil brought on by the increased driving which would be encouraged by the road as opposed to possible savings in the use of oil by the expected reduction of alleged traffic jams on Route 47; the cost of increased taxes to municipalities experiencing a greater demand for services, such as police and fire protection due to development encouraged by Route 55, as opposed to the possible economic benefits of increased tax ratables to those communities; the cost of having less agricultural land versus the benefit of quicker and more efficient farm-to-market supply routes for farmers and food processors. Plaintiffs argue that such analysis is a statutory requirement, the absence of which renders the FEIS legally insufficient.

■ While in the broad sense NEPA requires discussion of the costs and benefits of proposed federal action, *County of Suffolk v. Secretary of the Interior*, 562 F.2d 1368, 1384 (2d Cir. 1977), the analysis need not be a formal and mathematical one:

> Section 102(2)(C)(iv) of the Act requires an analysis of "the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity". . . .
>
> "NEPA does not demand that every federal decision be verified by reduction to mathematical absolutes for reduction to a precise formula" *quoting Sierra Club v. Lynn*, 502 F.2d 43, 61 (5th Cir. 1974) . . . .
>
> . . . The [environmental impact] statement, by giving the decisionmaker and other readers enough detail concerning all of these costs and benefits to permit reasoned evaluation and decision, meets the Section 102(2)(C)(iv) requirements that long-term environmental costs be weighed against immediate benefits.

*Sierra Club v. Morton*, 510 F.2d 813, 827 (5th Cir. 1975), *citing Sierra Club v. Lynn*, 502 F.2d 43, 61 (5th Cir. 1974).

■ In the instant case, the FEIS contains a chapter entitled "Relationship Between Short-Term Uses of Man's Environ-

ment and Long-Term Productivity," acknowledging the statute in language in § 102(2)(C)(iv). This chapter does not contain tables nor equations; nor does it identify its objective as "cost-benefit analysis." The chapter does not attach a dollar value to each of the factors discussed with relation to the potential impacts of the construction. However, it does discuss the benefits which will result from the construction and points out the long-term changes which the area may undergo either as a result of the construction or as a result of the trend in the area away from farming.

The analysis contained in this chapter satisfies the requirements of the statute as set forth in *Sierra Club v. Morton, supra.* It has "giv[en] the decision-maker and other readers enough detail concerning all of [the] costs and benefits to permit reasoned evaluation and decision, [and] meets the Section 102(2)(c) requirement that long-term environmental costs be weighed against immediate benefits." *Sierra Club v. Morton, supra,* 510 F.2d at 827. Accordingly, plaintiffs are not entitled to summary judgment on Count I of their complaint on the ground of the insufficiency of the cost-benefit analysis.

■■■■ Turning to the defendants' motions for summary judgment on Count I, the court must ascertain whether the FEIS touches all the procedural bases. *See Hovsons, Inc. v. Secretary of the Interior,* 519 F.Supp. 434 (1981) (Thompson, J.). The court has previously indicated that the FEIS did consider secondary impacts including the place of the highway in the state's existing highway network, its relationship on existing and planned mass transit lines and the relationship between short-term uses and long-term productivity. While the FEIS does not contain a quantified analysis, it does set forth costs and benefits in such a way as to permit reasoned decision-making. Moreover, the court notes that

> [d]eterminations of economic benefits and costs that are tangential to environmental consequences are within [the] wide

area of agency discretion. NEPA, then, permits, at most, a narrowly focused, indirect review of economic assumptions underlying a federal project described in an impact statement.

*South Louisiana Environmental Council v. Sands,* 629 F.2d 1005, 1011 (5th Cir. 1980). In addition, where the alleged impact of future development is speculative at the time of the FEIS, a failure exhaustively to examine future trends does not render the FEIS inadequate. *Concerned Citizens on I-190 v. Secretary of Transportation,* 641 F.2d 1 (1st Cir. 1981); *Coalition for Canyon Preservation, supra.* Moreover, as recognized by the court in *Concerned Citizens,* secondary development is controllable by local authorities through land use controls.

■■■■ Plaintiffs contend that certain specific cost-benefit factors have not been analyzed such as oil consumption, increase in demand for services and loss of agricultural land. However, plaintiffs have not indicated how these factors bear a significant relationship to the long-term environmental costs of the project. Without such a relationship, an analysis of these factors would amount to mere speculation and would be of no relevance to the decision-makers. With regard to the purported secondary impact of development resulting in an increase in demand for services and loss of agricultural land, such changes are controllable by local authorities. Thus, the costs of such development cannot be anticipated by the planners.

A review of the FEIS reveals that it does indeed contain discussion of the role of Route 55, mass transit, potential development, loss of farmland, costs versus benefits, and the impact of the road upon cultural, aesthetic and socio-economic resources. Since "there is no doubt that [the Secretary] considered" the various ramifications of the project, and since "NEPA requires no more," *Strycker's Bay, supra,* at 228, 100 S.Ct. at 500, summary judgment in the defendants' favor on Count I is proper.

Plaintiffs contend that the FEIS also violates NEPA because it fails to make a detailed study of alternatives to the proposed

action. Plaintiffs contend that the applicable regulations are found at 40 C.F.R. § 1502.14. Under these regulations, the EIS "should present the environmental impacts of the proposal and the alternatives in comparative form, thus sharply defining the issues and providing a clear basis for choice among options by the decision-maker and the public." 40 C.F.R. § 1502.14. The section of the EIS which discusses alternatives should:

(a) Rigorously explore and objectively evaluate all reasonable alternatives and for alternatives which were eliminated from detailed study, briefly discuss the reasons for their having been eliminated.

(b) Devote substantial treatment to each alternative considered in detail including the proposed action so that the reviewers may evaluate their comparative merits.

(c) Include reasonable alternatives not within the jurisdiction of the lead agency.

(d) Include the alternative of no action.

An examination of the regulations relied on by plaintiffs reveals that they were not effective until July 30, 1979. Since the FEIS in the instant case was adopted in 1975, defendants cannot be expected to have complied with the regulations which plaintiffs urge in support of their position. Moreover, plaintiffs' position misconceives the function of the Council on Environmental Quality guidelines contained at 40 C.F.R. § 1502.14. Since the Council on Environmental Quality is established by Title 2 of NEPA as an advisory body having authority to promulgate guidelines to aid "responsible officials" to develop their own procedures for identifying actions, the "guidelines are merely advisory and the Council on Environmental Quality has no authority to prescribe regulations governing compliance with NEPA." *Greene County Planning Board v. FPC*, 455 F.2d 412, 421 (2d Cir.) *cert. denied*, 409 U.S. 849, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972); *Aertsen v. Landrieu*, 637 F.2d 12, 18 (1st Cir. 1980).

Plaintiffs complain that the FEIS discusses only 3 alternatives in detail, namely, the three proposed corridors. Three other alternatives, i.e., no action at all, improving existing Route 47 and relieving congestion on Route 47 through the use of mass transit, are treated in a summary manner and dismissed as impractical. Thus, the discussion of alternatives cannot be regarded as complete. Moreover, the FEIS begins with the conclusion that the road will be built, rather than reasonably weighing the alternative proposals.

Section 102(2)(C)(iii) of NEPA requires a federal agency in assessing the environmental effects of a project to discuss alternatives to the proposed action. 42 U.S.C. § 4332(2)(C)(iii). 23 C.F.R. § 771.18(j) contains the applicable regulations for the discussion of alternatives in an EIS. It provides:

(j) *Alternatives*

(1) This section shall include a discussion with maps and other visual aids, as appropriate, of the *reasonable* alternatives studied in detail, including those that might enhance environmental quality or avoid some or all of the adverse environmental effects. Examples of such alternatives include alternate locations and designs, not implementing the proposed action, postponing the action, providing a lower level of service, providing a reduced facility (lanes/design), and an increase or decrease in public transportation.

The term "alternative" is not defined in the statute nor the regulations. However, the regulations make clear that a discussion of alternatives is only required as to "reasonable" alternatives.

The purpose of the alternative requirement is to assure that the government agency as a decision-making body has considered *methods* of *achieving* the *desired goal* other than the proposed action. *Piedmont Heights Civic Club, Inc. v. Moreland*, 637 F.2d 430, 436 (5th Cir. 1981). (Emphasis added.) "Consideration of other *realistic* possibilities for action forces an agency to consider the environmental effects of a project and evaluate those effects against the effects of alternatives." *Id.* (Emphasis

added.) The concept of reasonable alternatives has been limited by the courts to require consideration only of feasible, non-speculative alternatives. *Vermont Yankee*, 435 U.S. at 551, 98 S.Ct. at 1215; *Natural Resources Defense Council v. Morton*, 458 F.2d 827 (D.C.Cir.1971). Although the regulations cite as examples of the kind of alternatives which an EIS might consider the alternatives of doing nothing and an increase in public transportation, these examples are guidelines and not mandates applicable to every situation. The degree to which an alternative should be considered, or indeed whether an alternative should be considered at all, varies with the existing circumstances.

In the instant case, the FEIS contains an adequate discussion of the alternatives of do nothing, improving existing facilities and relieving congestion through use of mass transit, from which the decision-maker and the public could conclude that these alternatives were neither reasonable nor feasible. The "do nothing" alternative could not, under any circumstances, be regarded as an alternative method of achieving the desired goal—i.e., relieving the congestion on Route 47. Moreover, a lengthier discussion of these alternatives would not have rendered these alternatives more feasible nor more reasonable. Since the court finds that the FEIS complies with the statutory requirements, it is not necessary to go behind it to plaintiffs' allegations that the statement begins with the conclusion that the road will be built. Based upon the discussion of alternatives in the DEIS and the FEIS and upon the fact that reasonable alternatives were explored in detail, defendants are entitled to summary judgment on Count II. Plaintiffs' motion for summary judgment is denied.

*Count III*

Plaintiffs allege in their complaint that the proposed construction of Route 55 in stages represents a "substantial change," thus requiring supplementation of the EIS.

Defendants contend that the question of substantial change is not properly before the court at this time. First of all, the federal defendants have not been informed yet regarding the precise changes contemplated by the NJDOT. Second, the FHWA has not considered or determined whether the NJDOT modifications entail "substantial changes in the proposed action that would significantly affect the quality of the human environment," within the meaning of the regulations. 23 C.F.R. § 771.14(i). In addition, the FHWA has advised NJDOT to conduct an environmental reevaluation of the phasing proposal, which reevaluation has not yet been completed.

While the court agrees with plaintiffs that the regulations may require a supplemental EIS where substantial changes *are made*, there is no evidence in the record that such changes *have been made*. Until such time as the state presents its proposals to the FHWA, the federal defendants cannot even consider whether the proposal represents a substantial change, thus triggering 23 C.F.R. § 771.14(i). Until such time as the federal defendants have the opportunity to comply with the regulation's requirements, it would be fruitless and premature for this court to hold that the defendants have violated NEPA and the regulations thereunder. Accordingly, the court is persuaded that Count III of the complaint is premature and must be dismissed for lack of ripeness, without prejudice to plaintiffs' right to institute an appropriate suit challenging future final FHWA action.

In sum, defendants' motions for summary judgment on Counts I and II are granted. Defendants' motions to dismiss Count III are granted.

Plaintiffs' motions for summary judgment are denied.