**TILLAMOOK COUNTY,**
Plaintiff–Appellant,

v.

**U.S. ARMY CORPS OF ENGINEERS,**
Defendant–Appellee,

City of McMinnville, acting by and through its Water and Light Commission, Defendant–Intervenor–Appellee.

No. 01–35922.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 6, 2002.

Filed April 29, 2002.

Marianne G. Dugan, Eugene, Oregon, for the plaintiff-appellant.

David J. Lazerwitz, Washington, District of Columbia; Thomas C. Lee, Portland, Oregon, for the defendant-appellant.

G. Kevin Kiely, Portland, Oregon; Clark I. Balfour, Portland, Oregon, for the defendant-intervenor-appellee.

Before: POLITZ,* CANBY, and KLEINFELD, Circuit Judges.

* Honorable Henry A. Politz, Senior United States Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designation.

## OPINION

POLITZ, Circuit Judge.

Tillamook County appeals the denial of its motion for preliminary injunction to prevent intervenor-defendant the City of McMinnville, Oregon, from continuing the enlargement of its existing municipal water supply reservoir along the Nestucca River. The County complains that the finding by the United States Army Corps of Engineers that the proposed expansion would not have a significant environmental impact was arbitrary and capricious, and that the district court abused its discretion in denying the preliminary injunction. Concluding that the Corps conducted an adequate investigation and that the district court did not abuse its discretion, we affirm.

## BACKGROUND

The existing reservoir is situated at the headwaters of the Nestucca River, approximately twelve miles from the City, and is an integral component of the municipality's water supply system. The City seeks to expand the reservoir to avert water shortages caused by an increasing population. The initial water shortage is expected to occur sometime between 2002 and 2020, depending upon rain conditions. The proposed expansion would entail raising the existing dam by 30 feet to increase the storage capacity of the reservoir. It would directly impact 13.26 acres of navigable waters, 12.7 acres of which would be affected by filling the reservoir after construction of the new dam and spillway in 2002. Because the expansion includes the placement of dredge or fill materials into navigable waters of the United States, the Commission was required to obtain a section 404 permit from the Corps.[1]

In seeking to obtain federal and state authorization for the proposed expansion of the reservoir, the Water Commission of the City of McMinnville applied for a dredge or fill permit from the Army Corps of Engineers to fill 2.4 acres of navigable waters under section 404 of the Clean Water Act.[2] The issuance of a section 404 permit is considered a major federal action under the National Environmental Policy Act ("NEPA"),[3] therefore, the Corps was required to prepare a draft and final environmental assessment of the project.

The Corps prepared an initial assessment and, following a period of public comment and a review process, determined that the project would not have a significant impact on the environment. In February 2001, the Corps issued its final environmental assessment and Finding of No Significant Impact, and a section 404 permit to the Commission to place fill material in 2.36 acres of navigable waters.[4] After the issuance of the section 404 permit, the Commission began construction of the reservoir and at the time of this appeal had completed the initial stages of construction, required under the permit's terms to be completed prior to September 15, 2001. Under the Commission's current construction schedule, the expanded reservoir will be filled in early 2003.

In June 2001, the County brought the instant action[5] against the Commission and moved for a temporary restraining order and preliminary injunction, claiming that the Corps failed to comply adequately

---

1. 33 U.S.C. § 1344.

2. *Id.*

3. 42 U.S.C. § 4332(2)(C).

4. The 2.36 acres were comprised of 1.8 acres of open water and .56 acres of wetlands.

5. The complaint sought relief under the Administrative Procedure Act, 5 U.S.C. § 706, alleging that the Corps failed to comply adequately with the NEPA and the Clean Water Act in issuing the section 404 permit.

with the NEPA and the Clean Water Act in the course of issuing the section 404 permit. The district court denied the temporary restraining order and we dismissed the County's appeal for lack of appellate jurisdiction.

In September 2001, the district court denied the County's motion for a preliminary injunction. On October 3, 2001, the County filed the instant appeal and moved for an emergency stay pending appeal which we denied in November 2001.

## ANALYSIS

*Preliminary Injunction Standard*

■■■ We review the denial of a motion for preliminary injunction for abuse of discretion.[6] A district court abuses its discretion when it bases its decision on an erroneous legal standard or clearly erroneous findings of fact.[7] To obtain preliminary injunctive relief, the movant must show: (1) a probability of success on the merits combined with a possibility of irreparable harm if the relief is denied; or (2) serious questions are raised and the balance of hardships tips sharply in the movant's favor.[8] These are not alternative tests but, instead, are extremes of a single continuum.[9]

*Probability of Success on the Merits*

The County contends that the Corps' decision not to prepare an EIS based on its conclusion that there would be no sig-

nificant environmental impact violated the NEPA because of the significant and uncertain impacts of the proposed expansion. The County adds that even if an EIS would not be required under the NEPA the environmental assessment failed to evaluate adequately alternatives and to describe mitigation measures under the proposed action. We are not persuaded.

### A. *Requirement of an EIS*

■■■ We review an administrative agency's decision not to prepare an EIS to assure that the decision was not arbitrary and capricious.[10] We must determine whether the "agency has taken the requisite hard look at the environmental consequences of its proposed action" and has conducted a "reasoned evaluation of the relevant factors."[11] We will reject an agency's decision "only if the [agency] committed a clear error of judgment."[12]

■■■ The NEPA is a procedural statute intended to ensure environmentally informed decision-making by federal agencies.[13] It requires those agencies to prepare an environmental impact statement for major federal actions "significantly affecting the quality of the human environment."[14] The statute is not meant to "mandate particular results" but to provide a process to ensure that federal agencies take a "hard look" at the environmental consequences of proposed acts.[15] When an agency makes a decision

---

6. *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 730 (9th Cir.1999).

7. *Id.*

8. *Los Angeles Mem'l Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1201 (9th Cir.1980).

9. *Alaska v. Native Vill. of Venetie*, 856 F.2d 1384, 1388–89 (9th Cir.1988).

10. 5 U.S.C. § 706(2)(A).

11. *Greenpeace Action v. Franklin*, 14 F.3d 1324, 1331–32 (9th Cir.1993) (citations omitted).

12. *Cal. Trout v. Schaefer*, 58 F.3d 469, 473 (9th Cir.1995) (citations omitted).

13. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 351, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989).

14. 42 U.S.C. § 4332(2)(C).

15. *Robertson*, 490 U.S. at 350, 109 S.Ct. 1835.

subject to the NEPA's procedural requirements, "the only role for a court is to insure that the agency has considered the environmental consequences; it cannot interject itself within the area of discretion of the executive...."[16]

■ Specific guidance for when a full environmental impact statement must be prepared is provided by regulations promulgated by the Council on Environmental Quality.[17] The regulations require the preparation of an environmental assessment that "briefly provide[s] sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact."[18] A full environmental impact statement is not required if the agency concludes after a good hard look that the proposed action will not have a significant environmental impact.[19] Additionally, an agency's decision to forego preparation of an EIS may be justified, even in the presence of adverse environmental impacts, if the agency adopts mitigation measures in response to identified impacts.[20]

B. *Adequacy of the Environmental Assessment*

■ *The County complains that the environmental assessment* prepared by the Corps failed to adequately describe mitigation measures pertaining to sediment and erosion control and dam safety and analyze

an adequate range of alternatives. These contentions lack merit. While the Corps was required to develop the proposed mitigation measures "to a reasonable degree," it was not required to develop a complete mitigation plan detailing the "precise nature ... of the mitigation measures" nor were the measures required to "completely compensate for adverse environmental impacts."[21] The Corps adequately described specific mitigation measures in the environmental assessment and section 404 permit which require the permittee to comply with dam safety regulations established by the Oregon Water Resources Department, and to take certain steps to prevent erosion at wetland erosion sites and compensate for wetland loss caused by reservoir expansion.

The Council on Environmental Quality regulations require that an environmental assessment "include brief discussions" of the need for the proposed action, alternatives as required by the NEPA, and "the environmental impacts of the proposed action."[22] Only "practicable alternatives" need be discussed.[23] We review "an agency's range of alternatives under a 'rule of reason' standard which requires an agency to set forth only those alternatives necessary to permit a reasoned choice."[24] The Corps considered a number of alternatives in evaluating the City's water needs, including: (a) no action; (b) four alternative

---

**16.** *Strycker's Bay Neighborhood Council, Inc. v. Karlen,* 444 U.S. 223, 227, 100 S.Ct. 497, 62 L.Ed.2d 433 (1980) (citations omitted).

**17.** 40 C.F.R. § 1500.2 *et seq.*

**18.** *Id.* § 1500.2(a)(1).

**19.** 40 C.F.R. § 1508.13; *LaFlamme v. FERC,* 945 F.2d 1124, 1127 (9th Cir.1991).

**20.** *Wetlands Action Network v. U.S. Army Corps of Eng'rs,* 222 F.3d 1105, 1121 (9th Cir.2000), *cert. denied,* — U.S. ——, 122 S.Ct. 41, 151 L.Ed.2d 14 (2001).

**21.** *Id.*

**22.** 40 C.F.R. § 1508.9(b).

**23.** *See id.* § 230.10(a). "An alternative is practicable if it is available and capable of being done after taking into consideration cost, existing technology, and logistics in light of overall project purposes." *Id.* § 230.10(a)(2).

**24.** *Northwest Environmental Defense Center v. Bonneville Power Admin.,* 117 F.3d 1520, 1538 (9th Cir.1997) (citations omitted).

dam locations in the region; (c) differing reservoir levels; (d) phased project implementation; and (e) alternative water supply sources including other surface water sources, ground water, and conservation. The Corps rejected these alternatives in its final environmental assessment for various reasons. Under the circumstances, we cannot say that the Corps failed to take the necessary hard look at the environmental impact of the proposed expansion.

The judgment of the district court is AFFIRMED.