**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 16 2003**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

STEVEN M. HANNON,

      Plaintiff-Appellant,

v.

PETER L. CLARK, in his official
capacity as Supervisor of the
Arapahoe/Roosevelt National Forest
and responsible officer for the
Loveland Ski Area Revised Master
Development Plan Final EIS and the
Decision Memo for Clear Creek Skiing
Corporation Lift No. 9; UNITED
STATES DEPARTMENT OF
AGRICULTURE, FOREST SERVICE;
CLEAR CREEK SKIING
CORPORATION, a Colorado
corporation,

      Defendants-Appellees.

No. 02-1348
(D.C. No. 98-K-1766)
(D. Colo.)

---

ORDER AND JUDGMENT [*]

---

Before **TACHA** , Chief Judge, **BRORBY** , Senior Circuit Judge, and **HARTZ** ,
Circuit Judge.

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Procedural History

In 1995, defendant United States Department of Agriculture, Forest Service (Forest Service), as part of the 1995 Loveland Ski Areas Revised Master Development Plan Final EIS (FEIS), approved a surface ski lift to transport one to two skiers at a time to the upper reaches of the Loveland Basin Ski Area near the crest of the Continental Divide.  That area is home to a narrow land bridge across the Continental Divide which connects roadless areas north and south of Interstate 70 and is the only route for many terrestrial wildlife species to cross I-70.

In 1998, after realizing that the demand for extreme skiing had increased and that snowboarders could not easily use a surface lift, the owner and operator of the ski area, defendant Clear Creek Skiing Corporation (CCSC), submitted to the Forest Service a design proposal for a new quad chairlift.  The new lift (lift #9) would be larger, carry more people per hour, and be located closer to the narrowest part of the land bridge than the previously approved surface lift.

After doing some additional study, but without preparing a supplemental environmental impact statement, the Forest Service approved the expanded lift,

-2-

and construction began in the summer of 1998. While hiking in the area that fall, plaintiff Steven Hannon observed the ongoing construction. In September 1998, after an unsuccessful attempt to secure a temporary restraining order and a preliminary injunction, plaintiff brought suit in federal court challenging the Forest Service's approval of the construction and operation of lift #9. Plaintiff specifically alleged that the sight and sound of the lift's operation would disturb the wildlife traveling the land bridge. The lift has since been constructed and is in operation.

In November of 2000, after personally visiting the site, the district court issued a fifty-three page opinion ultimately concluding that, because the administrative record contained no written analysis of the impact of lift #9 on wildlife, the court could not determine whether that issue had been given appropriate consideration by the Forest Service and thus whether there was compliance with the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321–4370d, and its implementing regulations. Specifically, the court noted "[t]here is nothing in the record that provides any kind of written analysis of the fact that the top of the ski lift is, in fact, highly visible. There is also nothing pertaining to any analysis of this fact in terms of impact and significance of any impact to the wildlife using the critically important land bridge." Aplees' Supp.

App. at 300. The court accordingly remanded the case to the Forest Service for further administrative proceedings.

In March 2001, the Forest Service issued its decision on remand stating that the Service had "completed further analysis of the impacts, and their significance, associated with the visibility and audibility of Loveland's Lift #9 to wildlife using the land bridge over I-70" and had determined that a supplement to the FEIS was not warranted. *Id.* at 305. Describing itself as "constrained" by the fact of the Forest Service's reevaluation and the fact that the Service had adequately addressed the visibility issue, the district court declined to "second-guess the decision made" and affirmed the decision on remand, refusing to order the dismantling or modification of lift #9 in its present form. *Id.* at 472. This appeal followed.

On appeal, plaintiff argues that the district court erred in its initial remand to the Forest Service, contending that the court instead should have enforced a Forest Service decisional memo and ordered a supplemental EIS. Plaintiff further contends that the Forest Service was improperly committed to the building of lift #9 from the outset, that the revised opinions of the Forest Service and the Fish and Wildlife Service after remand should be disregarded, and that, pursuant to the Endangered Species Act, the Forest Service and the Fish and Wildlife Service should be required to conference formally.

<u>Propriety of Remand</u>

With respect to a district court's decision to remand in the first instance, we have said that "[i]f the agency has failed to provide a reasoned explanation for its action, or if limitations in the administrative record make it impossible to conclude the action was the product of reasoned decisionmaking, the reviewing court *may* supplement the record or remand the case to the agency for further proceedings." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1575 (10th Cir. 1994) (emphasis added). "A court's judgment as to whether the record before it needs further explanation in order for the court to understand and properly evaluate the agency's action is a determination that lies within the discretion of the court." *Taiwan Semiconductor Indus. Ass'n v. Int'l Trade Comm'n*, 266 F.3d 1339, 1344 (Fed. Cir. 2001). We therefore review the district court's decision to remand this matter to the Forest Service for abuse of discretion and find none.

As the district court found, there was nothing in the administrative record provided for the court's initial review which comprehensibly addressed the visibility and audibility issues of lift #9 from the land bridge atop the Continental Divide. While, as plaintiff points out, there were references in the record to the sight and sound issues, there was no comprehensive analysis of the impact of those factors on the wildlife from the Forest Service. The court was thus unable to

-5-

conclude whether the Forest Service's approval of the lift was the product of reasoned decisionmaking. Remand was the proper course.

Forest Service Pre-Disposition

Plaintiff argues that the judgment of the district court was incorrect because the Forest Service was committed from the outset to allowing CCSC to build lift #9 and that, after the remand, it simply abandoned earlier requirements for mitigation of the sight and sound impacts from the lift. On appeal, our review is the same as that of the district court with no particular deference given that court. *Olenhouse*, 42 F.3d at 1580. Thus, under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, we will "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). While we give the agency's decision "a presumption of regularity," we must still engage in a "thorough, probing, in-depth review." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971). [1]

---

[1] Plaintiff argues that the Forest Service has forfeited its right to the usual deference accorded agency action because of what he terms were "misrepresentations" in the initial court review process. Plaintiff does not cite any authority for this proposition, and we have found no case refusing to accord deference to an agency decision simply because there has been a remand for further fact finding. *Cf. Chevron U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 863 (1984) (refusing to withhold deference where agency had, from time to time, changed its interpretation of a statutory term).

Plaintiff's complaint alleged that the actions of the Forest Service were in derogation of NEPA. Our role in this circumstance is limited: "once an agency has made a decision subject to NEPA's procedural requirements, the only role for a court is to insure that the agency has considered the environmental consequences; it cannot interject itself within the area of discretion of the executive as to the choice of the action to be taken." *Strycker's Bay Neighborhood Council, Inc. v. Karlan*, 444 U.S. 223, 227-28 (1980) (quotation omitted). "It is well-settled that the judiciary's role in the NEPA context is merely to ensure that the federal agency takes a hard look at the environmental consequences of its actions." *Middle Rio Grande Conservancy Dist. v. Norton*, 294 F.3d 1220, 1225 (10th Cir. 2002). NEPA was not designed to ensure decisions that members of a reviewing court "would have reached had they been members of the decisionmaking unit of the agency," *Vermont Yankee Nuclear Power Corp. v. NRDC*, *Inc.*, 435 U.S. 519, 558 (1978), nor is it the function of such a court to substitute its judgment for that of the agency, *Overton Park*, 401 U.S. at 416. Given this standard, we agree with the district court that the Forest Service has complied with the mandate of the remand order and has demonstrated that it has taken a "hard look," *see Middle Rio Grande*, 294 F.3d at 1225, at the environmental consequences of the placement of lift #9.

After the remand order, Dennis G. Lowry, a forest wildlife biologist attached to the Arapahoe and Roosevelt National Forests and the Pawnee National Grassland, produced a report entitled "Reevaluation of Lift #9 and Effects to Wildlife on the Land Bridge over I-70 Highway." In it, Lowry examined the winter wildlife use on the land bridge, he discussed various factors that influence effects on wildlife, including human influences and weather-related influences, he specifically estimated the effects on wildlife due to the presence, operation, and use of lift #9, and he examined the effects of the lift on species that may use the land bridge both in the winter and in the snow-free months.

After reviewing this report and other pertinent information, the Forest Service decided that a supplement to the EIS was not necessary. The rationale for that decision was based on the following conclusions:

> Human activities, not the view of objects such as ski lifts, pose the greatest potential impact to wildlife movement on the land bridge.
>
> Operation of Lift #9 and associated human activity are limited to those times of year and day when wildlife is least likely to be present.
>
> Effective mitigation measures insure that people accessing this area using the lift remain below and move away from wildlife that may be traveling in the most likely route on the land bridge.
>
> Wind of sufficient force and direction to mask human and lift generated sound is a feature of the land bridge 70%–80% of the time.
>
> Based on these considerations and others, the [Lowry] report estimated little to no direct or indirect impact to wildlife potentially occurring or traveling on the land bridge in winter due to Lift #9.

-8-

The [Lowry] report also estimated that the effects–individually and collectively–to wildlife and habitat due to the lift do not significantly contribute to impacts that exist or that are foreseeable in the future.

Aplees' Supp. App. at 305-06. While as a reviewing court we do not merely rubber-stamp the decisions of an agency, we agree with the district court that the Forest Service has adequately considered the environmental and wildlife impact of the design and location of lift #9 pursuant to the remand order.

Plaintiff's argument that the Forest Service was improperly committed to the lift project from the outset is based largely on a remark made by the agency supervisor at an initial meeting with CCSC where he said "I want to make this work, get the chair approved, but don't want to gloss over." R. Vol. III at 65. We find this an innocuous comment from the supervisor of an agency charged with developing the area under consideration as a recreational ski area. *See id.* at 318-19. Further, the size of the record convinces us that this issue was hardly "glossed over." The mere fact that the agency arrived at the same conclusion after remand that it did initially does not, by itself, demonstrate bias or require a stricter standard of review. *See City of Los Angeles v. United States Dep't of Transp.*, 165 F.3d 972, 977-78 (D.C. Cir. 1999).

Revised Opinions of Agency Defendants After Remand

Plaintiff argues that the Forest Service and the Fish and Wildlife Service had determined, well before the remand, that the visibility and audibility of lift #9

were significant for environmental purposes and that they should not now be allowed to change their opinions. We agree with the district court that this argument is basically an attempt to get the court to substitute its judgment for that of the agency, a step we cannot take. Further, we do not find it inconsistent that, upon receiving more information in the form of the Lowry report and an additional report commissioned by defendant CCSC, [2] that agency opinions could reasonably have changed.

Need for Agency Defendants to Conference Formally Pursuant to the Endangered Species Act

Plaintiff finally submits that, because the lynx has now been listed as threatened, the Fish and Wildlife Service is required to issue a biological opinion after formal conferencing. Because plaintiff did not raise this issue until his response brief after the remand decision, the district court properly refused to consider it, as do we.

Summary

In conclusion, we hold that the district court's decision to remand this matter to the Forest Service was not an abuse of discretion. We further conclude

---

[2]    Plaintiff contends that this report should not have been part of the administrative record. His motion to strike the report was denied by the district court. Contrary to plaintiff's position, the Forest Service was well within its authority to consider all reliable scientific studies including one submitted by its co-defendant. *See Friends of the Earth v. Hintz*, 800 F.2d 822, 834-35 (9th Cir. 1986).

-10-

that the action of the Forest Service in response to the remand order was not arbitrary, capricious, an abuse of discretion, or otherwise unlawful. In compliance with the remand order, the agency provided a thorough analysis of the sight and sound impacts of lift #9 on the relevant wildlife. Because the agency decision rests on a rational basis, it must be upheld. *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974).

      The judgment of the district court is AFFIRMED.

Entered for the Court

Deanell Reece Tacha
Chief Judge