**SIERRA CLUB, a non-profit corporation; National Parks and Conservation Association, a non-profit organization; Southern Utah Wilderness Alliance, a Utah non-profit corporation, and The Wilderness Society, a District of Columbia non-profit corporation, Plaintiffs,**

**v.**

**Donald P. HODEL, in his capacity as Secretary of the United States Department of the Interior; The Department of the Interior of the United States; the Bureau of Land Management; Garfield County, a political subdivision of the State of Utah; and Harper Excavating, Inc., a Utah corporation, Defendants.**

No. 87–C–0120 A.

United States District Court, D. Utah, C.D.

May 16, 1990.

---

Wayne G. Petty of Moyle & Draper, William J. Lockhart, Univ. of Utah, College of Law, Salt Lake City, Utah, and Lori Potter, Sierra Club Legal Defense Fund, Inc., Denver, Colo., for plaintiffs.

Dee Benson, U.S. Atty., Joseph W. Anderson, Asst. U.S. Atty., Salt Lake City, Utah, Ronald W. Thompson and Barbara G. Hjelle of Thompson, Hughes & Reber, St. George, Utah, Wallace A. Lee, Garfield County Atty., Panguitch, Utah, for defendants.

## MEMORANDUM OPINION & ORDER

ALDON J. ANDERSON, Senior District Judge.

### I.  BACKGROUND

The case now before the court is part of a continuing controversy which focuses on

a county's plans to improve a dirt road in southern Utah, known as the Burr Trail. The Burr Trail covers a distance of approximately 66 miles through Garfield County, Utah. The road extends from the town of Boulder in a southeasterly direction through Long Canyon, the Blues, then through Capitol Reef National Park and ultimately to its terminus near the Bullfrog Marina on Lake Powell within the Glen Canyon National Recreation Area.

This case arises out of Garfield County's plan to make the western twenty-eight miles of the Burr Trail (segment one) into an improved two-lane gravel road to enable safer travel and more economical maintenance.[1] Along its course, the Burr Trail passes between and bounds two federally protected wilderness study areas (WSAs), the Steep Creek WSA and the North Escalante Canyons WSA. Asserting concern over the impact that construction and subsequent increased travel would have on the WSAs and on the plants, animals, and archaeological sites in the area, the Sierra Club and other environmental groups sued the Secretary of the United States Department of the Interior, the Bureau of Land Management (BLM) and Garfield County. The original complaint sought to enjoin construction until the County and the BLM complied with the Federal Land Policy Management Act (FLPMA) and the National Environmental Policy Act (NEPA).

After a lengthy trial, this court found that Garfield County had a right-of-way over the western 28 miles of the road (the Harper contract or Segment one of the Burr Trail). One part of the proposal—in the riparian area known as The Gulch—threatened the WSAs. To protect The Gulch, the court ordered Garfield County to seek from the BLM a FLPMA permit to relocate part of the road outside the existing right-of-way. The court further ordered the BLM to conduct studies of plant life along the trail, to monitor the construction in areas with archaeological sites, and to direct alterations in the plan where nec-

essary to preserve plant life or archaeological sites. The court also held that earlier studies and the substantial evidence at trial were the equivalent of an environmental impact statement (EIS) covering this area of the Burr Trail. Because this finding appeared to satisfy NEPA requirements, the court dissolved the preliminary injunction. Both sides appealed the court's decision to the Court of Appeals for the Tenth Circuit, which stayed dissolution of the preliminary injunction pending appeal.

The Tenth Circuit affirmed this court's ruling as to the right-of-way but reversed the courts finding that the substantial equivalent of an EIS had already been accomplished. *Sierra Club v. Hodel,* 848 F.2d 1068 (10th Cir.1988). The Circuit found that the scope of the right-of-way was properly determined under state law, and held that the road could be widened as necessary to meet the exigencies of increased travel, limited to what was reasonable and necessary with respect to a continuation of the preexisting uses. Furthermore, the circuit held that Garfield County was permitted to impair adjoining WSAs to the extent the impairments did not unreasonably degrade the study areas.

Additionally, the Tenth Circuit held that the proposed project constituted major federal action, and thus, fell under the purview of NEPA, and that NEPA requires either a Finding of No Significant Impact (FONSI) or an EIS before a project falling within its scope may proceed. The Circuit determined that the responsibility was with the BLM to perform an EA for the particular project, and that past environmental studies, while they may be useful, were inadequate to support either a proper finding of no significant impact, an environmental impact statement, or their substantial equivalent. Consequently, it reversed this court's decision and ordered this court to remand the case to the BLM for a new environmental assessment, followed by either a FONSI or an EIS. As to the area of

---

1. While not an issue in the case, the record shows that defendants intend eventually to seek to pave the entire 66 miles of the Burr Trail. The issues framed for trial along with this courts decision and the Tenth Circuit's decision substantively speak only to section one of the Burr Trail which under the Harper contract would be improved to a gravel road.

the Burr Trail involved, the Circuit stated that the "BLM [would] be required to address environmental issues affecting only those areas in which, under the law of the case, it still has authority to act." *Sierra Club v. Hodel*, 848 F.2d 1068, 1096 (10th Cir.1988). It concluded that *"BLM's authority [was] limited to what [was] relevant to its duty to prevent unnecessary degradation of the WSAs." Id.* (emphasis in original).

Under the Tenth Circuit's ruling, that "to the extent it can be determined that the road improvement project would not adversely impact the WSAs, it should be permitted to go forward now," *Id.*, Garfield County petitioned this court for partial dissolution of the injunction. On December 2, 1988, this court entered its order partially dissolving the injunction. Work was allowed to proceed on that portion of the road extending from the bottom of the Blues to the western boundary of Capitol Reef National Park. This ruling was based upon the proffered testimony of David Everett, a BLM environmental specialist, stating that work in the area released from the effect of the injunction would not unnecessarily or unduly degrade any WSA. The parties stipulated, in connection with the release from the injunction, that Garfield County could also commence construction with respect to the state section traversed by the Burr Trail.

The proposed work for the remainder of the road was reviewed by BLM through an environmental assessment process which commenced with the preparation of a Draft Environmental Assessment (DEA) by an independent consultant, JBR Consultants Group (JBR). The work of the independent consultant was directed at the discretion of the BLM pursuant to a Memorandum of Understanding between Garfield County and BLM.

The DEA was distributed to the public for comment and two public hearings were held, one in Escalante in Garfield County and the other in Salt Lake City. Thereafter, an environmental assessment, "The Boulder-to-Bullfrog Road Improvement Project (Burr Trail) Final Environmental Assessment (EA): *A supplement to paving the Boulder-to-Bullfrog Road EA (1985),"* EA No. Ut–040–89–6, (1989), was prepared by David Everett, of the BLM, Cedar City District Office, in cooperation with the Richfield District Office.

Following the 1989 EA, Gordon Staker, District Manager for the Cedar City District, executed a FONSI and Record of Decision (ROD) for the Harper contract, which stated that "impacts are not expected to be significant at this time." The FONSI and ROD further specified that "[t]he decision to allow the proposed action would not result in any undue or unnecessary environmental degradation to the Steep Creek WSA and north Escalante Canyon/The Gulch WSA." The BLM decision approved road reconstruction, including "graveling or paving," on the segment of the Burr Trail previously at issue before the court, and on a second large BLM segment of the trail not previously considered (segment 3).

After issuance of the final 1989 EA and FONSI and ROD, Garfield county again petitioned this court for a complete dissolution of the injunction. However, plaintiffs appealed BLM's decision to the Interior Board of Land Appeals (IBLA or Board). Because of the pending appeal, this court denied Garfield County's original petition for complete dissolution of the injunction, stating that until "final agency decision is reached, the court is not in a position to determine whether the BLM has complied with the NEPA requirements in the Tenth Circuit Court's remand." Order at 4, (July 19, 1989).

On appeal to the IBLA, plaintiffs challenged the 1989 FONSI, pointing out that National Park Service comments to the 1988 draft EA indicated the planned realignment of the eastern segment of the road adjacent to Capitol Reef National Park would require realignment within the park affecting proposed wilderness units. Plaintiffs also challenged the effort of the BLM to justify the 1989 EA supplement to the 1985 EA on which the 1985 FONSI was based. Plaintiffs noted that the 1985 FONSI was predicated on a prior proposal which

contained substantial protective measures which were abandoned in the 1989 proposal. Further, the nature of the work proposed for all BLM segments had been expanded to include paving of the road. Plaintiffs also asserted that the scope of the 1989 EA was improperly segmented by the BLM in violation of the requirements of NEPA.

In its written opinion on appeal, the IBLA considered the adequacy of the EA and FONSI with respect to the judicial remand of the Harper contract to improve and gravel (but not pave) segment one of the Burr Trail separately from the adequacy of the EA and FONSI to support the expanded project which was not considered theretofore by this court or the Tenth Circuit. The IBLA affirmed the decision of the BLM with respect to the judicial remand of the Harper contract, but set aside and remanded the rest of the BLM decision. In affirming the BLM's actions as to the Harper contract, the IBLA stated:

> The term "unnecessary and undue degradation" is defined in the BLM IMP [Interim Management Policy and Guidelines for Land Under Wilderness Review] as follows: "Impacts greater than those that would normally be expected from an activity being accomplished in compliance with current standards and regulations and based on sound practices, including use of the best reasonably available technology." IMP, 44 FR 72034 (Dec. 12, 1979). Accepting the county's valid existing right to improve the right-of-way subject to the statutory obligation of BLM to bar unnecessary and undue degradation of WSA's, our review of BLM's NEPA compliance with respect to the judicial remand of the Harper contract to improve and gravel (but not pave) segment 1 of the Burr Trail is guided by whether the record discloses that BLM took a hard look at the impacts of the proposed action on WSA's and supports the FONSI based on the absence of any unnecessary and undue adverse impacts

to WSA's requiring preparation of an EIS. In view of the limited scope of the proposed action defined by the terms of the judicial remand, we find that the record (including the 1988 Draft EA and the 1989 EA) support [sic] the FONSI, *i.e.,* the absence of any unnecessary or undue degradation of any WSA which would give rise to a significant impact. Accordingly, we affirm the decision of BLM to this extent.

*Sierra Club,* 111 IBLA 122, 133 (1989).[2]

Following the IBLA decision, Garfield county renewed its request to this court for a complete dissolution of the injunction which remained in effect. Plaintiffs countered with a motion to defer proceedings until the IBLA ruled on the plaintiffs' petition for reconsideration of its decision. Because of IBLA's expertise and its opportunity to reconsider its previous decision in the light of claims of improprieties at the BLM level, the court deferred ruling on Garfield county's motion until IBLA ruled on plaintiffs' petition to reconsider.

In support of the petition, plaintiffs asserted that the decisions of BLM which were the subject of IBLA review were improperly influenced by pressure from sources outside the Department of the Interior. Plaintiffs further challenged the IBLA's decision to affirm the BLM finding of no significant impact with respect to the Harper contract on the ground the IBLA erred in applying the law of the case. As a result, they contended, the scope of the project was improperly segmented.

On February 2, 1990 the IBLA filed its opinion on "Petitions for Reconsideration." Addressing plaintiffs' claim of improper influence, the IBLA noted the claim centered around claimed *ex parte* contacts and pressure exerted on the BLM. The IBLA concluded that improper influence was relevant only as to the final administrative decision maker. The IBLA noted that "[v]irtually every EA or EIS which the Board must review on administrative ap-

---

2. Because the rest of the project was not the subject of judicial remand from the circuit court, this court has no jurisdiction to review the IBLA's decision with respect to the rest of

the project. The court simply notes that the IBLA set aside the BLM's decision as to the rest of the project and remanded to the BLM.

peal is related to a use of the public lands or their resources which is advocated either by a private party applicant or the agency itself." *Sierra Club*, at 4 (IBLA decision filed Feb. 2, 1990) (order denying Petitions for Reconsideration). In the matter at issue, the IBLA, and not the BLM, was the final administrative decision maker. Because there was no allegation that the IBLA was improperly influenced, the Board rejected plaintiffs' claim.

The IBLA similarly rejected plaintiffs' contention that the scope of the environmental analysis for the Harper contract was improperly segmented. The Board reasoned:

> The key to understanding the Board's resolution of this issue is the distinction between the nature of the project as originally developed and remanded by the courts (the Harper contract to improve segment 1), on the one hand, and the subsequent proposal to improve and pave the length of the Burr Trail as considered by BLM in the 1988 draft EA and the 1989 EA's. We found the environmental analysis performed by BLM adequate to support the FONSI for the project to improve (but not pave) segment 1 of the Burr Trail. However, we found the analysis inadequate to the extent it was cited to support a FONSI for the enlarged and expanded scope of the project considered therein. The proper scope of the environmental analysis for the Harper contract to improve segment 1 of the Burr Trail was an issue in the litigation in the courts and this Board and the parties are bound by the courts' rulings in this regard. In this respect we must distinguish the case of *McDonald v. Clark*, 771 F.2d 460 (10th Cir.1985), cited by appellants. In *McDonald* the legal issue upon which rejection of the noncompetitive lease offer was based on judicial remand was not a subject of the prior litigation between the parties. *McDonald v. Clark, supra* at 463. Accordingly, we must reject appellants' contention that the scope of the environmental analysis for the Harper contract was improperly segmented.

*Sierra Club*, at 4 (IBLA decision filed Feb. 2, 1990) (order denying Petitions for Reconsideration). As a result, the Board found that the Harper contract was not improperly segmented.

Now before the court is Garfield County's motion for dissolution of that part of the preliminary injunction (the part of the Harper Contract bounded by WSAs in segment one) which remains in effect. The court heard oral argument on the pending motions on March 9, 1990 and at the conclusion of that hearing took the matters under advisement. Plaintiffs oppose Garfield County's motion on several grounds, argued both in brief and orally before the court. First, plaintiffs assert the same claims as those argued in front of the IBLA and ask that the court either rule in their favor on these issues or reverse and remand to the IBLA for further proceedings. Further, plaintiffs claim that the BLM pre-determined the results of the EA, pre-determined to make a FONSI based on the EA, and thus, abandoned its responsibilities under NEPA. Plaintiffs ask for remand of the case to the IBLA for more proceedings, and ask for further discovery to support their claims against the BLM.

## II. ANALYSIS

Because judicial review is not specifically provided for under NEPA, the court proceeds under the Administrative Procedure Act. *Sierra Club v. United States Army Corps of Eng.*, 772 F.2d 1043, 1050 (2d Cir.1985). Under the Administrative Procedure Act, the court must set aside an agency's action only if the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1982). Normally, agency action is arbitrary and capricious when the agency bases its decision on factors which Congress did not want considered, completely fails to consider an important aspect of the issue, makes a decision that is contrary to law and the evidence before it, or offers an explanation for its decision that is so implausible that it cannot be attributed to a difference of opinion or agency expertise. *Motor Vehicles Mfrs. Assn. v. State Farm Mut.*, 463 U.S.

29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983); *Sierra Club v. United States Army Corps of Eng.,* 772 F.2d 1043, 1051 (2d Cir.1985). More specifically, under NEPA, the role of the court is to "insure that the agency has considered the environmental consequences" of its action. *Strycher's Bay Neighborhood Council v. Karlen,* 444 U.S. 223, 227, 100 S.Ct. 497, 499, 62 L.Ed.2d 433 (1979). The court must not "interject itself within the area of discretion of the executive as to the choice of the action to be taken." *Id.* at 227–28, 100 S.Ct. at 499–500, *quoting Kleppe v. Sierra Club,* 427 U.S. 390, 410 n. 21, 96 S.Ct. 2718, 2730 n. 21, 49 L.Ed.2d 576 (1976).

■ In this case, the Tenth Circuit, on appeal, observed that the court "review[s] the agency's determination for 'reasonableness.' The agency's findings on the threshold NEPA issues of major federal action and significant impact 'must be reasonable in the light of the mandatory requirements and high standards set by the statute.'" *Sierra Club v. Hodel,* 848 F.2d at 1089, *quoting Wyoming Outdoor Coordinating Council v. Butz,* 484 F.2d 1244, 1249 (10th Cir.1973). The Circuit further noted that " '[t]he party challenging the agency's decision shoulders the burden' of proving unreasonableness." *Id. quoting Park County Resource Council, Inc. v. United States Department of Agriculture,* 817 F.2d 609, 621 (10th Cir.1987).

A. *Review of the Agency's Action*

■ The Tenth Circuit ordered the BLM to conduct an EA and return either a FONSI or an EIS with regard to the work contemplated under the Harper contract. The court noted that NEPA "requires the agency to consider numerous factors: environmental impact, unavoidable adverse effects, alternatives to the proposed action, the relationship between short-term uses and long term productivity, and irreversible commitments of resources called for by the proposal." *Sierra Club,* 848 F.2d at 1093. Judicial review of the agency's decision is based on the administrative record. The administrative record in this case consists of two boxes of documents including documents filed with this court and with the IBLA, maps and studies used in the environmental assessment process, the FONSI and EA on which the FONSI was based, along with substantial public comment on the proposed project and the Draft EA. Without reviewing the administrative record, the court would be "left to rationalize the agency's decision—a form of review which abandons standards in favor of predilections." *Id.* Therefore, to review properly the agency's action with respect to segment one of the Burr Trail, the court has thoroughly reviewed the administrative record.

The most important part of the administrative record is the EA conducted on segment one of the Burr Trail and the FONSI which was subsequently issued. The final EA on the project was issued on March 7, 1989, and incorporated the 1985 EA. *See* "The Boulder-to-Bullfrog Road Improvement Project (Burr Trail) Final Environmental Assessment (EA): *A supplement to Paving the Boulder-to-Bullfrog Road EA (1985),*" EA No. Ut–040–89–6, (1989). Apart from the perceived need on the part of Garfield County to promote increased tourism, the EA also cites other needs that the project will fulfill of importance to the residents and visitors of the area the road serves. Other needs include: the need for improved access to medical and educational facilities, the need to improve travel conditions in bad weather, the need for more efficient resolution of law enforcement and rescue situations in isolated areas, and the need for Garfield county to have improved access for administrative and maintenance purposes. To fulfill its responsibilities to consider an EIS, the EA evaluated the environmental consequences of the proposed action, the "national scenic road alternative," and the "no action alternative," and proposed mitigating measures that should be taken. The EA further evaluated the short term and long term impacts, the irreversible or irretrievable commitments of resources, and the cumulative impacts of each of these alternative actions. The administrative record also covers the Harper contract construction plans for the road, with the drains, culverts, curves, and the

measurements of the road in width and contours at various milepost locations of each part of the road. This enables identification of the road at any point with a WSA and the surrounding scenic and geographic location. Pictures detail examples of before and after appearance of the road at various places. Except for their claim of improper segmentation, plaintiffs have not claimed that at any given point the WSA would be unreasonably degraded by the Harper contract. They essentially rely on the argument that the 66 miles of the trail cannot be segmented, but must be looked at as a whole with an EIS.

After analysis of the potential impacts contained in the EA, the FONSI, issued March 8, 1989, found that any impacts were not expected to be significant. The rationale behind this decision was as follows:

> Garfield county has a valid grant of right-of-way under R.S.2477 of sufficient width to permit the sage passage of vehicles across lands administered by the BLM. The 10th Circuit Court of Appeals has confirmed this right.
>
> The decision to allow the proposed action would not result in any undue or unnecessary environmental degradation to the Steep Creek WSA and North Escalante Canyon/The Gulch ISA and is in conformance with BLM's land use plans. The mitigating measures are reasonable given the sensitive nature of the wilderness study units effected and BLM's knowledge that sufficient funds are available for their implementation.
>
> The 1985 EA prepared jointly by the Bureau of Land Management and the National Park Service did not identify any significant impacts for the total 66 mile road improvement project. This supplemental EA reconfirms the findings contained in the 1985 EA.

Finding of No Significant Impact and Record of Decision, at 2 (March 8, 1989).

After reviewing the administrative record, the court believes the IBLA's finding meets the "reasonableness" standard and that the administrative record supports the FONSI. The record discloses that the BLM "took a hard look" at the impacts of the Harper contract on the WSAs. As to an EIS the administrative record does not show any significant impact to the WSAs that would adversely affect its selection as a wilderness area, or in relation to the road construction itself does not show any unnecessary or undue degradation to the WSAs. Thus, the administrative record supports the FONSI for the Harper contract work on segment one of the Burr Trail.

B. *The Law of the Case*

■ Plaintiffs argue that the IBLA improperly applied the law of the case on judicial remand by considering the improvement of segment one of the Burr Trail apart from the intended future project to improve and pave the entire 66 miles of the Burr Trail. Plaintiffs contend that the revised scope of the future project requires further environmental analysis even prior to completing the Harper contract improvements. This argument overlooks the fact that the litigation as filed by the plaintiffs, responded to by the defendants, and tried by the court dealt solely with segment one of the Burr Trail. This court's ruling along with the Tenth Circuit's subsequent ruling dealt only with the proposal to improve segment one of the Burr Trail from a dirt road to an improved two-lane graveled road. These rulings delineated the law of the case, the proper scope of an EA and the responsibilities of the agency and of the court. Furthermore, as to the other segments of the road there is no contract in place for detailing construction, nor even any delineation of the boundaries of the road within the constraints of a determined right-of-way. Nor could there by any examination with respect to the locations where work under such a construction plan would unnecessarily degrade any identified WSA. Any expansion of the scope of the project to include a greater portion of the route or paving any portion of the route is outside the law of the case and thus out-

side the jurisdiction of this court.[3] Accordingly, the court holds that the environmental analysis dealing with segment one of the Burr Trail was not improperly segmented.

## C. Improper Influence and Predetermination

Plaintiffs have also claimed that bias and misconduct by BLM officials irreparably tainted the administrative process. They argue the possibility exists that BLM decisions where improperly influenced by pressure from sources outside the Department of the Interior, and want now to discover further to pursue this issue. Plaintiffs further claim that BLM officials may have "predetermined" that the EA would result in a FONSI instead of an EIS. Plintiffs have cited several federal court cases involving judicial review of agency actions where the matters were remanded to the agency after disclosure that the decisions were influenced by improper factors. The cases cited by the plaintiffs, however, are distinguishable from the matter at issue, in that they involve allegations of misconduct of the final administrative decision maker. *See D.C. Federation of Civic Associations v. Volpe*, 459 F.2d 1231, 1246–47 (D.C.Cir. 1972), *cert. denied*, 405 U.S. 1030, 92 S.Ct. 1290, 31 L.Ed.2d 489 (1972) (Secretary's decision was based on irrelevant factors

and thus could not stand); *Sangamon Valley Television Corp. v. United States*, 269 F.2d 221 (D.C.Cir.1959) (administrative decision vacated because of improper *ex parte* communication).

In the case at hand, the IBLA, and not the BLM, was the final administrative decision maker. The IBLA reviewed the administrative record and found that it supported the BLM's decision as to segment one of the Burr Trail. Plaintiffs allege no misconduct or other impropriety in connection with the IBLA.

The IBLA exercises *de novo* review authority. In its discretion, it may engage in its own fact finding by appointing an administrative law judge.[4] 43 C.F.R. § 4.415. The IBLA also exercises *de novo* review when reviewing the administrative record. Thus, the IBLA is not limited simply to ascertaining whether the BLM decision is supported by substantial evidence. *See United States Fish & Wildlife Service*, 72 IBLA 218, 220 (1983). The IBLA reviews all the evidence, and decides whether the record supports the BLM decision. In this case, after careful consideration of the administrative record, the IBLA determined that although the EA performed by the BLM was adequate to support a FONSI on segment one of the Burr Trail to improve it

---

**3.** Plaintiffs also point to a letter from the Environmental Protection Agency (EPA) to Gordon Staker dated January 17, 1989 as supporting their argument of BLM misconduct. A portion of the EPA letter noted concerns about BLM's failure to analyze impacts of the comprehensive project. Plaintiffs allege that BLM officials should have heeded the concerns of the EPA by refusing to analyze the environmental impacts of the Harper contract separately.

The EPA letter is included in the administrative record. It speaks with references to the entire Burr Trail as a project. Contrary to plaintiffs' allegations, the letter does not require BLM action. It gives advice and offers further help if needed. Moreover, the Circuit Court was asked by plaintiff's brief to consider their argument that the work on the Burr Trail was improperly segmented. The court did not adopt the argument. Additionally, plaintiffs presented this argument to the IBLA. The agency, in its final ruling, rejected the claim that the scope of the environmental analysis was improperly segmented and analyzed the Harper contract separately. *See Sierra Club*, at 4 (IBLA decision

filed Feb. 2, 1990) (order denying Petitions for Reconsideration).

**4.** Section 4.415 provides for fact finding by the IBLA as follows:

Either an appellant or an adverse party may, if he desires a hearing to present evidence on an issue of fact request that the case be assigned to an administrative law judge for such a hearing. Such a request must be made in writing and filed with the Board within 30 days after answer is due and a copy of the request should be served on the opposing party in the case. The allowance of a request for hearing is within the discretion of the Board and the Board may, on its own motion refer any case to an administrative law judge for a hearing on an issue of fact. If a hearing is ordered, the Board will specify the issues upon which the hearing is to be held and the hearing will be held in accordance with §§ 4.430 to 4.439, and the general rules in Subpart B of this part.

43 C.F.R. § 4.415.

to a graveled road, it was inadequate to support a FONSI for improving and *paving* segments one and three of the trail. The IBLA reached its own conclusions based on the law and the facts in the administrative record. Thus, unless the evidence reviewed by the IBLA as to segment one of the Burr Trail was found to be unreliable, or inadequate, any improper motive or influence which may have affected the BLM's decision would be effectively removed by the IBLA's *de novo* review of the record. There is no evidence that the IBLA's decision making process was thus flawed.[5]

In this case, the IBLA did not engage in fact finding, but rather limited its inquiry to a review of the administrative record. If the IBLA reviewed a record in which material items were improperly excluded or changed and which would have provided evidence of a significant adverse impact to a WSA, or of unnecessary or undue degradation of a WSA, there would be a basis for concern.

■ 1. *External Pressure.* Plaintiffs contend that BLM's decision in the 1989 EA and FONSI were predicated on improper influence rather than an objective application of the statutory criteria under section 102 of NEPA. In support of this allegation, plaintiffs point the court to several affidavits which they claim support an inference that the BLM was improperly influenced. Plaintiffs first refer to the affidavit of Joseph Jarvis, the consultant hired to undertake the environmental assessment. The affiant states that he was told by Dave Everett, who was responsible

for preparation of the 1989 EA, that "external pressures were too great for him to make a finding of 'significance,' as might be indicated by the 1988 draft EA. He stated that the BLM would prefer for others to push for an EIS." (affidavit of Joseph Jarvis at 5). The plaintiffs also offer the affidavit of William Lockhart, attorney for plaintiffs, regarding the Wagon Box Gravel Pit Environmental Assessment and the affidavit of Don Gillespie regarding a telephone conversation between the affiant and Robert Weidner, a staff assistant to Senator Garn, in 1986. Plaintiffs assert that these affidavits provide reasonable grounds for believing that *ex parte* contacts or external pressures may have affected the agency's decision making process and ask the court to remand this issue to the IBLA with instructions to provide for an investigative hearing before an Administrative Law Judge.

The affidavits of William Lockhart and Don Gillespie are not related to segment one of the Burr Trail, and thus cannot show that the BLM was improperly influenced with respect to segment one of the Burr Trail. The affidavit of William Lockhart pertains only to the Wagon Box Gravel Pit Environmental Assessment, which was conducted after the 1989 EA and FONSI were issued.[6] The affidavit does not relate at all to the Environmental Assessment of segment one of the Burr Trail, and thus is not evidence of improper influence with respect to anything now before the court. Likewise, the affidavit of Dan Gillespie pertains to events which took place in 1986, even before the Harper contract

5. Plaintiffs allege that the administrative record, which the IBLA reviewed, was inadequate. This claim focuses solely on alleged misconduct of the BLM. Plaintiffs claim no misconduct on the part of the IBLA with regard to the record.

It is clear that the administrative record before the court is the same record which the IBLA considered in making its decision. On March 5, 1990, Interior Regional Solicitor David Grayson filed with the court an attestation reciting his delivery of two boxes containing the administrative record. With his attestation, Mr. Grayson attached a statement by the Docket Attorney of IBLA characterizing the two boxes delivered to the court as "the administrative record reviewed by the Board of Land Appeals"

in the Burr Trail administrative appeal. Thus, with no evidence to the contrary, it appears that the administrative record before the court is the complete administrative record that the IBLA considered.

6. The Wagon Box gravel pit is a borrow pit from which gravel is to be taken and used to improve a small section of the Burr Trail. An EA on the gravel pit was conducted, after which the BLM issued a FONSI. On appeal, the IBLA found that "the EA and attached documentation establishe[d] a reasonable basis for the FONSI for the Wagon Box gravel pit." 111 IBLA 122, 138 (1989).

existed.[7] Again, because this affidavit does not relate to the Environmental Assessment conducted on segment one of the Burr Trail it presents no evidence of improper influence with respect to anything of material consequence.

The affidavit of Joseph Jarvis, though dealing with the Environmental Assessment of the Harper contract, is inadequate to support an inference that BLM officials were improperly influenced. The affiant's reference to external pressures provides no context which would suggest that the external pressures he refers to involved *ex parte* communications or any attempt at improper influence. Moreover, Mr. Everett, who allegedly made the statements regarding external pressure to Mr. Jarvis states in his affidavit that "[a]t no time during my work on the environmental assessment was I ever approached by any member of Congress, congressional aide or agent regarding my work on the environmental assessment." (Affidavit of Dave Everett at 2). Mr. Everett goes on to say: "[a]ll of my work in preparation of the environmental assessment was performed solely on the basis of my understanding of the laws and regulations pertinent to BLM, in accordance with the direction received from my superiors and from David Grayson, Regional Solicitor for BLM." *Id.* at 3. Likewise, Gordon Staker, District Manager for the Cedar City District of the BLM, who was responsible for the FONSI on the Harper contract, stated that he was not contacted at any time by "any member of Congress, any congressional aide or any other person acting as an agent of any member of Congress." Affidavit of Gordon Staker at 1. Mr. Staker further clarifies as follows:

> No external pressures were ever applied to me directly or indirectly, to act on the basis of any influence other than the laws and regulations pertinent to BLM in conducting its environmental assessment and in the ruling by the Tenth Circuit

Court. I based my decision entirely upon the environmental documents pertaining to this action, as well as related court direction and applicable law, as I understood it, based upon advice received from David Grayson, Regional Solicitor for BLM.

*Id.*

Accordingly, the court finds the evidence insufficient to support plaintiff's request for remand to the IBLA for its review of claims of possible improper influence, or improper *ex parte* communications with respect to the EA and FONSI with regard to segment one of the Burr Trail. Furthermore, Plaintiffs' allegations of improper influence do not support a reasonable inference that any evidence was changed or excluded from the administrative record which the IBLA reviewed. Clearly, it was not arbitrary, capricious or an abuse of discretion for the IBLA to reject plaintiffs' claims of improper influence and external pressure. Plaintiffs have failed to show that the IBLA's decision as to these claims was unreasonable.

2. *Predetermination of EA Results.* Plaintiffs also contend that BLM improperly predetermined the outcome of its NEPA review before the review had even begun. In support of this claim plaintiffs point to a handwritten note entitled "Burr Trail Issue" and dated June 24, 1988. Plaintiffs allege that the note indicates that BLM had determined, at the beginning of its NEPA review, to: 1) limit its analysis to an EA, and not prepare an EIS; 2) approve the action on the basis of the EA, in order to request dissolution of the injunction; 3) have the EA ready for consideration by the court in October; and 4) approve the proposed work so that construction could begin in mid-November. Plaintiffs request that the court grant discovery to determine if BLM improperly predetermined the outcome of its NEPA review.

---

7. Robert K. Weidner, legislative assistant to Jake Garn of Utah, who allegedly improperly influenced the BLM, further confirms by affidavit that he did not "contact officials of the Bureau of Land Management or the Solicitors Office to attempt to effect or influence BLM's environmental studies," with respect to the Harper contract. Affidavit of Robert K. Weidner at 1.

The note is part of the administrative record. As such, the parties and the IBLA had access to it on appeal and reconsideration, but no argument regarding it was raised before the IBLA. The note is attached to a copy of the Circuits opinion in this case along with a cover letter from O'dell Frandsen, Acting State Director of the BLM, to the District Managers of the BLM. The letter states:

> It is not yet clear whether the [Tenth Circuit's] decision will be appealed to a higher court. In the meantime it does provide us some interim guidance on dealing with R.S. 2477 grants.
>
> If this decision is not appealed we will be using it as a basis for development of Statewide policy and will be urging development of regulations at the Washington Office level, if appropriate.

Letter of O'dell A. Frandsen to District Managers of BLM (June 27, 1988). The handwritten note appears to state as follows:

> *Burr Trail Issue*     6/24/88
> Court Decision requires EA for portions of road adjacent to WSAs (Mt. Pennel in RDO)
> Will do *1* EA package—segment A and Segment B + take to judge for consideration of lifting injunction. County will do EA for Both CCDO segment + for RDO also—they will hire Third-party
> County wants to pave road this year but BLM not sure we should
> CCDO will have lead on EA (Dave Everrett) + will work w/ third-party contractor. County + RDO will work together on staking route + will provide ccord w/ CCDO.
> RDO needs point of contact (lead)—Alan Partridge. USO contact is Maggie.
> EA ready to go to Judge Anderson by Oct. contractor begin Mid–Nov.

The handwritten note, read together with this letter, shows that BLM was aware of the Circuit Court's decision, and wanted its district managers to be fully advised of the case and the possible use of the same for interim guidance and to advise what assignments were under way. It is clear, the BLM had determined to use the decision, if it was not appealed, in forming Statewide policy "if appropriate." Read together with the cover letter, the handwritten note contains no evidence that the BLM had determined to abandon its duty to perform an impartial EA. Given the prior 1985 EA and other studies that had been done, along with trial testimony of an actual field exam of the road by BLM which resulted in an order that the road be corrected in 10 places to avoid unnecessary degradation or environmental impact, it may, at best, show that its unknown author thought there was a basis for an EA that would enable the lifting of the injunction on section one of the Burr Trail. Such a belief, however, does not show agreement among the decision makers not to consider an EIS. In fact, the administrative record shows the BLM had many contributors to the study and substantial attention was given to those facts bearing on the possibility of an EIS. Additionally, these documents were in the record and were not raised as having importance until now. Moreover, these allegations in no way support an inference that any evidence, which would give rise to a finding of significant impact, was excluded from the administrative record which the IBLA reviewed. In the final analysis, there is no evidence or even a claim that the IBLA, the final agency decision maker, did other than its duty in deciding that a FONSI should be the result on section one of the Burr Trail.

### III.  CONCLUSION

Plaintiffs have failed to show to the satisfaction of the court any misconduct on the part of the BLM or the IBLA in the actions they have taken. Plaintiffs have failed to show either that BLM's decisions were influenced by improper pressure or that BLM was predisposed, without regard to their legal duty to fairly consider the EA and determine whether to issue a FONSI or an EIS. Furthermore, the Plaintiffs have presented no evidence from which an inference might by drawn that evidence, giving rise to a finding of significant impact as to the WSAs in segment one of the Burr Trail, was changed or excluded from the administrative record which the IBLA

reviewed. Without proof that evidence of significant adverse impact or unnecessary or unreasonable degradation of a WSA was kept from the record reviewed by the IBLA, the IBLA's *de novo* review effectively neutralizes any claims of improper interest in the result of its work on the part of the BLM. The IBLA found that the administrative record supported the FONSI in that there was no unnecessary or undue degradation of any WSA which would give rise to a significant impact in segment one.

Clearly, it was not arbitrary, capricious or abuse of discretion for the IBLA to deny a hearing before an administrative law judge or to deny plaintiffs' petition for reconsideration. Plaintiffs have failed to show that the IBLA's decision was unreasonable. Furthermore, the court finds no other reason that would preclude dissolution of the injunction. Accordingly, the IBLA's decision with respect to segment one of the Burr Trail, the Harper contract, is accepted as fulfilling the circuit court order of an EA or EIS for the Harper contract work along the WSAs in segment one of the Burr Trail. Therefore, defendants motion to dissolve the injunction is granted. All other motions are denied. The court will enter its order and judgment accordingly.

IT IS SO ORDERED.