**SIERRA CLUB, a non-profit Corporation, National Parks and Conservation Association, a non-profit Organization, Southern Utah Wilderness Alliance, a non-profit Corporation, and the Wilderness Society, a non-profit Corporation, Plaintiffs–Appellants,**

v.

**Manuel LUJAN, in his capacity as Secretary of the United States Department of the Interior, the Department of the Interior of the United States, the Bureau of Land Management, and Garfield County, a political subdivision of the State of Utah, Defendants–Appellees.**

No. 90–4091.

United States Court of Appeals, Tenth Circuit.

Nov. 18, 1991.

Wayne G. Petty of Moyle & Draper, P.C., Salt Lake City, Utah (Michael F. Heyrend, Salt Lake City, Utah, Lori Potter, Sierra Club Legal Defense Fund, Inc., Denver, Colo., and William J. Lockhart, Salt Lake City, Utah, with him on the brief), for plaintiffs-appellants.

Robert L. Klarquist, Atty., Dept. of Justice, Land and Natural Resources Div., Washington, D.C. (Myles E. Flint, Deputy Asst. Atty. Gen., Washington, D.C., Dee V. Benson, U.S. Atty., Joseph W. Anderson, Asst. U.S. Atty., Salt Lake City, Utah, and Edward J. Shawaker, Atty., Dept. of Justice, Land and Natural Resources Div., Washington, D.C., with him on the brief), for defendants-appellees Manuel Lujan, Secretary of the Dept. of the Interior, Dept. of the Interior and Bureau of Land Management.

Ronald W. Thompson of Thompson, Hughes & Reber, St. George, Utah (Wallace A. Lee, Garfield Co. Atty., Panguitch, Utah, Barbara G. Hjelle of Thompson, Hughes & Reber, St. George, Utah, with him on the brief), for defendant-appellee Garfield County.

Before TACHA and SETH, Circuit Judges, and BRATTON, District Judge *.

SETH, Circuit Judge.

In this appeal we revisit the Burr Trail in southern Utah for a second look at Garfield County's proposal to widen the western twenty-eight miles of the road. In *Sierra Club v. Hodel*, 848 F.2d 1068 (10th Cir. 1988), we determined that there was major federal action and ordered the district court to remand the case to the Bureau of Land Management (BLM) for an environmental assessment (EA) to be prepared followed either by a finding of no significant impact (FONSI) or an environmental impact statement (EIS). The action on this remand was to be taken within very narrow limits described in the mandate. On remand, BLM conducted an EA and issued a FONSI. BLM's action so far as it was relevant to this lawsuit was affirmed by the Interior Board of Land Appeals (IBLA). Based on the IBLA's decision, the district court lifted its injunction against construction on areas bordering the Wilderness Study Areas (WSAs) on the western twenty-eight miles of the road. 737 F.Supp. 629.

A brief review of the facts pertinent to our earlier decision is necessary. The Burr Trail connects the town of Boulder, Utah with the Bullfrog Basin Marina at Lake Powell. The trail travels sixty-six miles through rugged terrain, crossing or bordering unreserved federal lands, state lands, two WSAs, the Capitol Reef National Recreation Area and the Glen Canyon National Recreation Area. Garfield County has used and maintained the Burr Trail since the early 1940's. This use created a right-of-way under R.S. 2477. (43 U.S.C. § 932, *repealed by* Federal Land Policy Management Act of 1976 (FLPMA), § 706(a), Pub.L. No. 94–579, 90 Stat. 2793).

In the earlier appeal, the Sierra Club and other environmental groups (collectively referred to as Sierra Club) had brought suit over Garfield County's contract with Harper Excavating Company (the Harper contract) to improve the western twenty-eight miles of the Burr Trail (segment 1) from an essentially one-lane dirt road to a two-lane gravel road. Segment 1 runs from the town of Boulder to the border of the Capitol Reef National Park. Sierra Club there claimed the proposed action exceeded the County's right-of-way and violated the National Environmental Policy Act (NEPA). 42 U.S.C. §§ 4321 *et seq.*

The district court initially held that the scope of Garfield County's R.S. 2477 right-of-way was sufficient to accommodate the proposed changes. *Sierra Club v. Hodel*, 675 F.Supp. 594 (D.Utah 1987). The dis-

---

* Honorable Howard C. Bratton, United States District Judge for the District of New Mexico, sitting by designation.

trict court also found that BLM's involvement in the project constituted major federal action triggering NEPA, but that NEPA's requirements were sufficiently satisfied by facts developed during the trial before the district court.

We affirmed the district court's holding regarding the scope of the R.S. 2477 right-of-way. We held that the district court was correct in deferring to Utah state law to determine the existence and scope of the right-of-way and in applying Utah's "reasonable and necessary" use standard to the Harper contract. *Sierra Club v. Hodel*, 848 F.2d at 1083. However, we reversed as to the trial court's determination that NEPA's procedural requirements had been satisfied by the proceeding to that point.

As mentioned, the case was remanded under a narrow and closely defined mandate holding that BLM's duty under FLPMA § 603(c) was to *prevent unnecessary degradation of the WSAs* along the portion of the Burr Trail at issue. We held:

> "We order the district court to remand to BLM for an environmental assessment, followed by either a finding of no significant impact or an environmental impact statement. Whatever the shortcomings of the previous studies, on remand BLM will be required to address environmental issues affecting only those areas in which, under the law of the case, it still has authority to act.... BLM's *authority is limited to what is relevant to its duty to prevent unnecessary degradation of the WSAs*."

848 F.2d at 1096.

The required action by the Department of Interior on remand was thus specifically limited to the consideration of the impact (unnecessary degradation) of the road changes on the WSAs. The geographical area was so limited, and the consideration was necessarily to be within the authority of the County under its right-of-way. The only actual work under consideration by the County was the Harper contract. As stated, the scope of BLM's considerations which would be necessary in this case were so described and required.

Whatever other considerations were made by the BLM were of no consequence to this litigation. It was thus through the mandate to the district court that BLM was required to proceed under NEPA, was required to prepare an EA, and was required to make its examination within the rulings as to the scope of the County's right-of-way. This was basically a fact question. The BLM decided that the matter could be decided in the EA and did so.

We also directed on remand that the district court review the impact of the proposed road improvements on areas not bordering the WSAs and lift the injunction on these areas if it was determined that the road improvement project would not affect the WSAs. On December 2, 1988 the district court dissolved the injunction on areas of the road not affecting the WSAs. With the lifting of the injunction the parties also stipulated that work could begin on the state section traversed by the road.

BLM commenced its review under the mandate with a Draft Environmental Assessment. This was followed by a comment and public hearing period. BLM's Cedar City District Office issued the "Boulder to Bullfrog Road Improvement Project (Burr Trail) Final Environmental Assessment (EA): *A Supplement to Paving the Boulder–to–Bullfrog Road EA (1985)*, EA # UT–040–89–6."

Both the Draft EA and the Final EA considered environmental impacts beyond those which might arise through implementation of the Harper contract and the remand. BLM reasoned that given the County's long-range plans "it would be in the best interests of BLM to evaluate all anticipated road improvements." Affidavit of David Everett at 3. This policy decision to go beyond the remand resulted in BLM asking Garfield County to submit an *additional* "proposal" covering other segments of the road.

BLM's conclusions reflect its expanded scope of review. The agency found that paving the Harper segment and another segment in areas bordering the WSAs would be better than gravel and also suggested using colored pavement on the sec-

tions of road adjacent to the WSAs as a mitigating measure. "It is our finding that a proposed road construction project to pave segments 1 & 3 adjacent to all WSAs/ISAs and gravel or pave the remaining public lands administered by BLM would not create any significant undue or unnecessary impacts to the wilderness study units except as noted above." EA at 7.

BLM's decision to expand the scope of the EA resulted in two FONSIs—one for segment 1 (the Harper contract) and one for segment 3. The Harper contract FONSI found that "[t]he decision to allow the proposed action would not result in any undue or unnecessary environmental degradation to the Steep Creek WSA and North Escalante Canyon/The Gulch ISA." The FONSI further stated that the Final EA reconfirmed the finding in the 1985 EA that there were no significant impacts for the total 66–mile road improvement project.

Sierra Club appealed to the IBLA. BLM and Garfield County sought to bifurcate the appeal before the Board arguing that the initial Harper contract proposal should be reviewed separately from BLM's action related to the remainder of the road. The Board rejected this argument. However, the IBLA stated that "[a]lthough we have not bifurcated these appeals for purposes of review, it is clear that the parties and this Board are bound by the ruling of the court with respect to those aspects of the BLM decisions which implement the judicial remand." 111 IBLA 122, 130. The Board then conducted a two-part review of BLM's action, basically accepting BLM's conclusion as to the Harper contract and setting aside and remanding the remainder of the decision which was outside the remand.

The Sierra Club in its appeal to the IBLA also asserted for the first time that sources outside the Department of Interior improperly influenced the decisionmaking process of BLM. In an Order filed February 2, 1990, the Board rejected both arguments. Regarding the separate consideration of the Harper contract the Board stated:

"The key to understanding the Board's resolution of this issue is the distinction between the nature of the project as originally developed and remanded by the courts (the Harper contract to improve segment 1), on the one hand, and the subsequent proposal to improve and pave the length of the Burr Trail as considered by BLM in the 1988 draft EA and the 1989 EA's. We found the environmental analysis performed by BLM adequate to support the FONSI for the project to improve (but not pave) segment 1 of the Burr Trail. However, we found the analysis inadequate to the extent it was cited to support a FONSI for the enlarged and expanded scope of the project considered therein. The proper scope of the environmental analysis for the Harper contract to improve segment 1 of the Burr Trail was an issue in the litigation in the courts and this Board and the parties are bound by the courts' rulings in this regard."

IBLA Order denying Petitions for Reconsideration at 4.

On the question of undue influence, the IBLA found that Sierra Club's evidence of alleged impropriety did not warrant an additional evidentiary type hearing.

Garfield County thereafter petitioned the district court for dissolution of the preliminary injunction on areas of the road bordering the WSAs. The injunction was lifted. Although this court temporarily stayed the district court's ruling, on July 17, 1990 we denied a stay pending appeal and reinstated the district court's order. This appeal followed.

While Sierra Club's arguments in the earlier litigation of this case focused in large part on the scope of the right-of-way, an issue which was decided, the thrust of Sierra Club's current challenge is on the scope of review after the remand. It contends that the IBLA and the district court erred by relying on what it describes as the "law of the case" doctrine to limit the analysis to the western segment of the road. Sierra Club argues that the original "proposed action" was significantly expanded after remand which requires environmental analysis of the full length of the Burr Trail.

In our view, the IBLA properly and clearly divided the BLM consideration into two separate and distinct matters. The first was, of course, the Harper contract area as considered by this Court on the first appeal, which was the sole subject of the mandate on remand; and second, the rest of the Burr Trail, the second matter having been added by the BLM.

There can be no serious challenge to the determinations made on the first appeal as to the scope of the right-of-way, described above, and the statutory limits imposed on the BLM. As mentioned, the mandate was specific and the action to be taken by the BLM was described as was the geographical area. This was an affirmative direction to the BLM to take action required by statute and to exercise its discretion within the stated limits. The BLM could not under the mandate expand the scope of the litigation. There was no reason however why it could not consider at the same time other matters which were interesting to it but which were of no significance to the litigation. In our view, the IBLA properly and clearly divided BLM's consideration into the two separate and distinct matters.

█ We review de novo the district court's decision to affirm the IBLA applying the same standard of review applicable in the district court. Our prior cases, including our earlier decision in this case, applied a "reasonableness" standard of review to an agency's threshold NEPA determinations. In *Sierra Club I*, we stated that "[t]he agency's findings on the threshold NEPA issues of major federal action and significant impact 'must be reasonable in the light of the mandatory requirements and high standards set by the statute.'" *Sierra Club*, 848 F.2d at 1089 (*quoting Wyoming Outdoor Coordinating Council v. Butz*, 484 F.2d 1244, 1249 (10th Cir. 1973)). We further stated that "[r]easonableness is essentially a legal conclusion, and thus we review de novo the district court's ruling except to the extent the ruling turns on subsidiary factual findings." *Id. See also Park County Resource Council v. U.S. Dept. of Agriculture*, 817 F.2d 609 (10th Cir.1987).

We hesitate to again refer to the limitations on the BLM action by the remand and the right-of-way statute (RS 2477), and the geographical area within the WSAs, but this is a factor on the nature of our review as the case comes back to us. The court on the first appeal considered the "threshold NEPA determinations," and applied the reasonableness standard of review. Those disposed of, we are on this second review down to factual matters derived from the limited scope of the BLM action. Under the opinion on the first appeal we consider that our concerns are with "subsidiary factual findings," as mentioned above.

There is another significant factor which has been provided by the decision of the Supreme Court in *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989), decided after our earlier decision in this case. In *Marsh*, the Supreme Court rejected the Ninth Circuit's use of a "reasonableness" test to review an agency's decision to prepare a *supplemental* EIS. The Court held that *an agency* applied a "rule of reason" to determine whether agency action affects the human environment in a significant manner. However, since the agency's decision there "involves primarily issues of fact" *a court reviews* under the arbitrary and capricious standard of the Administrative Procedures Act, 5 U.S.C. § 706(2)(A). *Marsh*, 490 U.S. at 377, 109 S.Ct. at 1860. The Court also stated that it was limiting its holding to review of the "narrow question" of whether an existing EIS should be supplemented. However, the Court said at 374, 109 S.Ct. at 1859:

"Application of the 'rule of reason' thus turns on the value of the new information to the still pending decisionmaking process. In this respect the decision whether to prepare a supplemental EIS is similar to the decision whether to prepare an EIS in the first instance: If there remains 'major Federal actio[n]' to occur, and if the new information is sufficient to show that the remaining action will 'affec[t] the quality of the human environment' in a significant manner or to a significant extent not already con-

sidered, a supplemental EIS must be prepared. Cf. 42 U.S.C. § 4332(2)(C)."

And at 375–76, 109 S.Ct. at 1860:

"We conclude that review of the narrow question before us whether the Corps' determination that the FEISS need not be supplemented should be set aside is controlled by the 'arbitrary and capricious' standard of § 706(2)(A)."

Following *Marsh,* some courts have rejected the "reasonableness" standard in several circumstances. In *Goos v. I.C.C.,* 911 F.2d 1283 (8th Cir.1990), the court stated:

"*Marsh* establishes that when an agency determines not to prepare an EIS based on its review of the environmental impact of a project, as when it has already prepared an EA and issues a finding of no significant impact, a reviewing court reviews that determination under the arbitrary and capricious standard. Our cases which have reviewed a similar question under the reasonableness standard, are therefore incorrect."

*Id.* at 1292. The *Goos* court limited *Marsh's* arbitrary and capricious standard of review to factual questions made under the assumption that NEPA applies. According to the Eighth Circuit, *Marsh* did not overrule use of the reasonableness standard for threshold questions of NEPA applicability such as whether major federal action exists.

In *North Buckhead Civic Ass'n v. Skinner,* 903 F.2d 1533, 1538 (11th Cir.1990), the Eleventh Circuit found as follows:

"In *Marsh v. Oregon Natural Resources Council,* the Supreme Court considered the question of judicial review under NEPA and explicitly rejected the reasonableness standard.... We, therefore, adopt the arbitrary and capricious standard when reviewing agency action in NEPA cases; if the agency action was not arbitrary and capricious, it should not be set aside."

■ We feel compelled by *Marsh* and the previous opinion in this case to apply the arbitrary and capricious standard to this segment of the case. Again we note

the unique circumstances before us and do not consider this to be a departure from *Park County Resource Council v. U.S. Department of Agriculture,* 817 F.2d 609 (10th Cir.1987). Furthermore, we are mindful in these circumstances of the Supreme Court's statement that "the difference between the 'arbitrary and capricious' and 'reasonableness' standards is not of great pragmatic consequence." *Marsh,* 490 U.S. at 377, n. 23, 109 S.Ct. at 1861, n. 23.

■ Throughout the course of this litigation, Garfield County has openly stated that its long-range aims include paving the full length of the Burr Trail. Long-range aims, however, are quite different from concrete plans and specific undertakings such as the Harper contract submitted for purposes of environmental analysis under NEPA. *See Kleppe v. Sierra Club,* 427 U.S. 390, 410, 96 S.Ct. 2718, 2730, 49 L.Ed.2d 576 (1976). NEPA does not require an agency to consider the environmental effects that speculative or hypothetical projects might have on a proposed project.

Recognizing this principle, both the district court and this Court have been clear in limiting the scope of judicial review to the actual proposal at issue—the Harper contract. The district court stated in its initial opinion "[i]t is undisputed that the county plans eventually to pave the road.... The court wishes to emphasize, however, that the current proposal does not call for paving. That issue is not before the court and is not decided in this case." *Sierra Club v. Hodel,* 675 F.Supp. at 596, n. 2. We subsequently acknowledged that "[t]he County plans eventually to improve the entire sixty-six-mile trail, as well as to pave it. These plans are not part of the current proposal." *Sierra Club v. Hodel,* 848 F.2d at 1073, n. 2.

In its petition for rehearing of the earlier appeal, Sierra Club made its first attempt to expand the scope of our remand. It argued that the Secretary of Interior had a "duty under FLPMA § 302(b), 43 U.S.C. § 1732(b), to prevent unnecessary or undue degradation of *all public lands.*" *Sierra*

*Club,* 848 F.2d at 1100. We rejected the argument because it was an issue not raised in the original appeal and therefore was not proper in a petition for rehearing. *Id.* at 1101.

In this appeal, Sierra Club asks us to ignore the limitations specifically defined in the earlier appeal and mandate and to expand the case and scope of our review to include the entire road. We again decline the invitation.

■■■■ Under our earlier holding, BLM's NEPA responsibilities were limited. BLM cannot prevent improvements to Garfield County's R.S. 2477 right-of-way, *Sierra Club,* 848 F.2d at 1090, provided the improvements are "reasonable and necessary to ensure safe travel." *Id.* at 1084. This includes "improving the road to two lanes." *Id.* BLM's duty under FLPMA § 603 further limits its authority under NEPA to reviewing the County's road improvement projects *which affect WSAs.*

The argument is made that Garfield County submitted a proposal (after the remand) to BLM to have the entire road considered, and this has some significance. This however was made at the request of BLM, and again was no more than part of BLM's decision to expand the hearings, and is not a factor on this appeal. The case before us for review involves only the actual proposal challenged in the district court—the Harper contract.

■■■ The remaining question is whether the EA and FONSI relevant to the Harper contract satisfy NEPA. In the last appeal we stated that " '[t]he party challenging the agency's decision shoulders the burden' of proving unreasonableness." *Sierra Club,* 848 F.2d at 1089 (quoting *Park County Resource Council, Inc. v. United States Department of Agriculture,* 817 F.2d at 621).

After reviewing the briefs and hearing oral arguments in this appeal it is apparent that Sierra Club's challenge to the specific findings in the EA *relevant to the Harper contract* is without merit.

Sierra Club contends that BLM's finding that paving would be the least degrading alternative to graveling somehow faults the conclusions as to segment 1. Sierra Club does not argue that BLM failed to study the environmental impacts of implementing the Harper contract. The Board after review of the record concluded that the Harper contract would not cause "any unnecessary or undue degradation of any WSA which would give rise to a significant impact." Thus no EIS was required. The IBLA did not discuss the finding that paving would be a less degrading alternative than gravel because it concluded that paving was outside the scope of the Harper contract and outside the judicial remand. We agree.

After reviewing the record, we are convinced that the Department of Interior's NEPA review relevant to the Harper contract was thorough. NEPA § 102(2)(C) required BLM to consider "environmental impact[s], unavoidable adverse effects, alternatives to the proposed action, the relationship between short-term uses and long-term productivity, and irreversible commitments of resources called for by the proposal." *Sierra Club,* 848 F.2d at 1093. The final EA issued by BLM addressed each of these elements.

The agency considered environmental impacts and unavoidable adverse effects. It found that portions of the WSAs adjacent to segment 1 would lose wilderness status with the improvement of the road. BLM concluded that this loss was reasonable particularly in light of the County's right-of-way. The width of the road was analyzed in light of the perceived uses of the County. The EA states that a 24–foot–wide road, designed to a *non*-commercial standard, was the least degrading alternative.

After careful review of the record, we are satisfied that the agency took a "hard look" at the impacts of the proposed Harper contract on the WSAs in segment 1 of the Burr Trail and that the decision to forgo an EIS was not arbitrary and capricious.

■■■ Sierra Club also contends that BLM officials issuing the final EA and FONSI

were influenced by "external pressures". Sierra Club argues that the IBLA and district court erred by not conducting a hearing on the asserted ex parte pressures.

The pertinent evidence centers on the affidavit of Joseph Jarvis. BLM contracted with Jarvis' consulting firm, JBR Consultants Group, to conduct the environmental analysis relevant to Garfield County's proposal. The Draft EA prepared by JBR considered impacts over the entire length of the trail, and thus analyzed potential impacts under the assumption that the County eventually planned to pave the full length of the Burr Trail. After public comment on the Draft EA, Jarvis states that he was told by David Everett of BLM's Cedar City District, that BLM planned to conduct the Final EA. Jarvis states that Everett told him that the "external pressures were too great for BLM to make a finding of 'significance,' as might be indicated by the 1988 draft EA. Specifically, he [Everett] stated that the BLM would prefer for others to push for an EIS." Affidavit of Joseph Jarvis at 5.

The Appellees respond citing affidavits from BLM officials involved in the environmental assessment process. The David Everett referred to by Jarvis stated that "at no time did any person attempt to influence me to perform the environmental assessment based upon improper considerations." Affidavit of David Everett at 2–3. Gordon R. Staker, District Land Manager for BLM's Cedar City District who signed the Harper contract FONSI stated specifically in his affidavit "[n]o external pressures were ever applied to me directly or indirectly, to act on the basis of any influence other than the laws and regulations pertinent to BLM in conducting its environmental assessment and in the ruling by the Tenth Circuit Court." Affidavit of Gordon R. Staker at 1.

The IBLA considered the Jarvis affidavit in its Order of February 2, 1990 denying Sierra Club's Petition for Reconsideration. It rejected Sierra Club's argument that this statement demonstrates ex parte pressure on the decisionmaking process for two reasons. First, the Board cited its de novo review of the administrative record. It stated that absent allegations of improper pressure on the Board itself, de novo review ensured a fair decision. Second, the Board also rejected Sierra Club's assertion that the Jarvis affidavit warranted further examination into alleged ex parte conduct. The Board stated "[t]he motivation for the decision of BLM is simply not an issue in decisions such as those involved in these appeals. Virtually every EA or EIS which the Board must review on administrative appeal is related to a use of the public lands or their resources which is advocated either by a private party applicant or the agency itself." IBLA Petition for Reconsideration, February 2, 1990, at 3.

After reviewing the affidavits we find that the Board's decision against conducting additional evidentiary review was not arbitrary and capricious. We agree with the district court that the Board's de novo review does not automatically solve the problem of asserted ex parte conduct involving BLM officials; however, the evidence of alleged misconduct does not warrant a remand. The Jarvis affidavit does not state that ex parte contacts occurred. It merely states that David Everett was subject to external pressures. As the Board noted in its Order Denying Reconsideration, such external pressures are commonplace in EA and EIS preparation. Based on the several affidavits the trial court's decision and the Board's decision to reject Appellants' claims of undue influence was correct.

Because of our disposition of the earlier issues in this case, we do not address Sierra Club's final argument regarding an order requiring reclamation.

The decision of the United States District Court for the District of Utah is AFFIRMED.